UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:23-cv-21347-JEM

MIAMI SLICE PIZZA, LLC, a Florida
limited liability company,

    Plaintiff/Counter-Defendant,

v.

CARNIVAL CORPORATION, a Florida
corporation

    Defendant/Counter-Plaintiff.

_____/

## AMENDED COMPLAINT

Plaintiff, Miami Slice Pizza, LLC ("Miami Slice" or "Plaintiff"), by and through undersigned counsel, hereby sues Defendant Carnival Corporation ("Carnival" or "Defendant") and alleges as follows:

### INTRODUCTION

1. The story of Miami Slice is that of a new restaurant rising through the immense challenges presented by the COVID-19 pandemic. While the pandemic forced numerous restaurants in South Florida and around the nation out of business, Miami Slice flourished into one of the hottest restaurants not just in South Florida but the entire country. Founded in 2019, Miami Slice adapted to the pandemic by selling its artisan pizza to customers curbside from its back alley "pizza lab." After developing a cult-like following as a "speakeasy pizza" to-go service restaurant, Miami Slice opened a "slice bar" restaurant in the Summer of 2022. The restaurant's concept was simple – an open kitchen, bar-style restaurant serving five select styles of pizza for customers to takeout or eat-in.

2. Miami Slice's concept, and artisan pizza, has proven immensely successful as demonstrated *intera alia* by various news articles attached herewith as **Exhibit A**. "Since its arrival as an order-online-only pop-up during the pandemic, Miami Slice has been the hottest debutante at the ball, written up often as the best new pizza spot in Miami and Instagrammed by those who have become famous for eating pizza." Exhibit A, at 2. Barstool Sports' Dave Portnoy called Miami Slice "an instant contender for best pizza in Miami."[1] Well recognized on both the local and national stage, Miami Slice's meteoric rise to fame attracted numerous celebrities and social media influencers, including most recently David Beckham and Tom Brady who held a private, yet highly publicized, pizza party at Miami Slice for their families and friends. Exhibit A, at 10-30.

3. Miami Slice's triumphant story veered awry when its neighboring, corporate giant decided to trample on its intellectual property rights. Defendant Carnival's intentional hijacking of the "Miami Slice" name and concept for use on Carnival's newest ship the "Carnival Celebration" now necessitates Miami Slice's instant claims for trademark infringement.

4. Since November 2022 – well after Miami Slice became synonymous with high quality, artisan pizza – the Carnival Celebration has been cruising from the Port of Miami, within walking distance from Miami Slice's downtown slice bar restaurant, while unlawfully using the MIAMI SLICE mark and infringing on Miami Slice's trademark rights.

5. Specifically, one of the "zones" on Carnival's newest ship is a fast-casual dining area entitled "Biscayne 820," a nod to Carnival's original postal address in Miami and an homage to Carnival's South Florida roots. However, rather than celebrating its Miami roots, the Carnival

---

[1] *See* video available at https://www.barstoolsports.com/video/3441528/barstool-pizza-review-miami-slice-miami-fl

Celebration revealed Carnival's willful disregard for South Florida businesses by trampling on an emerging Miami business' brand and intellectual property rights. Not only did Carnival intentionally and unlawfully name the Carnival Celebration's fast casual pizza restaurant "Miami Slice," Carnival added insult to injury by adopting a confusingly similar market presentation including astonishingly similar all capital lettering and featuring a similar limited menu of five styles of pizza in a quick service format.

6. Carnival was undoubtedly aware of Miami Slice and its senior trademark rights to the "Miami Slice" name at least by virtue of Miami Slice's burgeoning popularity and its federal registration of the MIAMI SLICE trademark. Notwithstanding this awareness, the world's largest cruise line steamed ahead with at best reckless indifference, and more likely sinister motives, for Miami Slice's rights as the first and senior user to the MIAMI SLICE trademark.

7. Miami Slice's brand, goodwill, and reputation are all on the line in this lawsuit. Absent relief from the Court, Miami Slice's artisan pizza and popular quick service concept is likely to be confusingly associated with cruise line food. Such consumer confusion is an ongoing threat to crush this restaurant's success story. Indeed, in just a few months since Carnival Celebration first set-sail, actual consumer confusion has already begun to surface demonstrating that consumers are, and will continue, falsely associating the infringing restaurant on the Carnival Celebration with Miami Slice.

## JURISDICTION AND VENUE

8. This is an action seeking damages and injunctive relief for trademark infringement and unfair competition under federal and state common law.

9. This Court has subject matter jurisdiction over the federal claim pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331.

10. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claim because the claim is so related to the federal Lanham Act claim in this action, over which this Court has original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution.

11. Defendant is subject to personal jurisdiction because it is a resident of this State with a principal place of business in this District.

12. Venue is proper in this District pursuant 28 U.S.C. § 1391(b)(1) since Defendant resides in this district and 28 U.S.C. § 1391(b)(2) since a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

### MIAMI SLICE: A LOCAL SUCCESS STORY RISING TO FAME

13. The MIAMI SLICE trademark was first used by Sotavento Ventures, LLC, a Florida limited liability company, in connection with restaurant services at least as early as March 27, 2019.

14. Sotavento Ventures, LLC offered these early restaurant services at least through the Miami Slice website operating at the domain www.miamislicepizza.com.

15. On April 1, 2019, Sotavento Ventures filed for federal registration of the trademark MIAMI SLICE in connection with "restaurant services." The MIAMI SLICE mark was approved and registered on the supplemental register on August 20, 2019. A true and correct copy of the federal registration is attached herewith as **Exhibit B**.

16. Miami Slice was founded as a Florida limited liability company on January 7, 2020.

17. All rights, title, and interest to the MIAMI SLICE trademark, including the federal registration and all common law trademark rights, have been assigned, transferred, and conveyed to Miami Slice.

18. From its inception through the height of the pandemic, Miami Slice operated a to-go or carryout model, selling high quality, artisan pizza using proprietary recipes from its "pizza lab" located at 3509 NE 2nd Avenue in Miami, Florida. This location was also the site of La Latina Miami, a restaurant operated and owned by the owners of Miami Slice.

19. To place an order, customers would utilize the Miami Slice website or use the square checkout link through the Miami Slice Instagram account. Customers would pick up their order from the alleyway just north of "La Latina Miami," a sister restaurant to Miami Slice that shares common ownership.

20. Miami Slice was an instant success, often selling out days in advance of when the customers could pickup their order. Because customers would pickup their orders from the alleyway adjacent to La Latina Miami, fans of Miami Slice coined this "speakeasy pizza." Vehicles would line around the alleyway leading to the back of La Latina Miami as customers waited for their to-go order.

21. On or about June 28, 2022, Miami Slice transitioned its operations from the back of La Latina Miami to serving pickup orders exclusively from its new downtown location. By August 2022, the slice bar was fully open giving customers the option of ordering and enjoying Miami Slice in a bar-style, sit-down lounge.

22. Year-over-year sales numbers reflect Miami Slice's rise to fame. For example: for the month of September 2020, Miami Slice's revenue was $1,717.03; for the month of September 2021, Miami Slice's revenue was $8,110.29; and for the month of September 2022, Miami Slice's revenue was $60,119.05.

23. Miami Slice's popularity is no flash in the pan. Miami Slice's monthly revenue has increased every single month from July 2022 to the filing of this Complaint.

24. These recent revenue numbers are particularly impressive considering that the slice bar is only open from 5-9pm on Thursday through Sunday. The customer line usually wraps around the block, and patrons can expect to wait well over an hour to dine at Miami Slice.

25. Based on this revenue, Miami Slice estimates that it has served at least 10,000 customers since its inception. Additionally, by November 2022, Miami Slice estimates it was serving in excess of 2,000 customers per month, which restaurant industry veterans would appreciate equates to an hourly customer rate at or exceeding nationally famous fast-casual restaurants notwithstanding Miami Slice's limited operating hours and seating at its slice bar.

26. The media took notice. For example, Miami Slice's growing popularity was captured by a cover page feature in the Miami Herald on September 19, 2022 describing Miami Slice as one of its "favorite pizza shops to grow out of the pandemic." Exhibit A, at 31-44. On September 29, 2022, the Miami Heat's Duncan Robinson raved about Miami Slice in a Locked on Heat podcast, and the interviewer agreed that Miami Slice was "all over [his] Instagram."[2] On Friday November 18, 2022, TimeOut.Com characterized Miami Slice as "written up often as the best new pizza spot in Miami and instagrammed by those who have become famous for eating pizza." Exhibit A, at 2-9. On December 17, 2022, the online blog Only In Your State characterized Miami Slice as having "a cult-like following" thanks to its "unique dining concept focusing on artisanal New York-style pizza with a gourmet twist." Exhibit A, at 45-56.

27. By October 28, 2022, Miami Slice's emerging fame and established reputation captured the attention of Dave Portnoy of Barstool Sports. Mr. Portnoy is a well-known pizza mega-fan who reviews pizza throughout the nation. His YouTube channel "One Bite Pizza Reviews" has over 800,000 followers, his Twitter account has 2.8 million followers, and his

---

[2] Video available at https://www.youtube.com/watch?app=desktop&v=-u_m5glHF9c

Instagram account has 4.4 million followers. While Mr. Portnoy can be picky and frequently gives negative reviews, there was nothing negative in his review of Miami Slice. Mr. Portnoy characterized Miami Slice as "an instant contender for best pizza in Miami, no doubt" and gave it a "monstrous score" in his review. Mr. Portnoy's glowing recommendation reached millions of users throughout the world and received tens of thousands of users commenting or interacting with his posts. Comments on Mr. Portnoy's YouTube video echoed his sentiment:

- YouTube user jimmycakes12 – "This is the best looking pizza hes had on in ages" (comment liked 669 times with 47 replies)

- YouTube user Tigran Babaev – "No owners or staff outside, no random fans filming and screaming, just good old Dave and some fine ass pizza." (comment liked 311 times with 6 replies).

- YouTube user Kainor – "Could tell it was good as soon as he opened the box" (comment liked 142 times with 3 replies)

- YouTube user Loren Ajamil – "This place is insane, score dead on accurate. Ordered 2 whole pizzas from the them the other day and was blown away."" (comment liked 17 times).

- YouTube user Jeff – "Good lord, that's an absolutely incredible looking pie. Glad to see he gave it an appropriate score!" (comment liked 12 times with 1 reply).

28. Mr. Portnoy was not alone in documenting Miami Slice's ascension to the throne of best pizza in Miami. Miami Slice's social media accounts steadily increased in size and influence. For example, Miami Slice's Instagram account now has over 35,000 followers, and its posts regularly draw thousands, sometimes tens or hundreds of thousands, of views and hundreds,

sometimes thousands, of interactions. Attached as **Exhibit C** is an exemplary list of social media postings by Miami Slice.

29. Reviews and unsolicited promotion by third party social media users, unaffiliated with Miami Slice, also reflect Miami Slice's growth in popularity. Attached as **Exhibit D** is a list of exemplary third-party, social media postings featuring Miami Slice.

30. Today, Miami Slice's status as an established brand for selling high quality, artisan pizza is readily confirmed considering its popularity and the notoriety of its customers. As one of numerous examples, in January 2023, celebrity athletes Tom Brady and David Beckham together with celebrity personalities David Grutman, David Einhorn, and Jeff Soffer closed down Miami Slice for a private pizza party that drew international media attention. Exhibit A, at 10-30.

## THE CARNIVAL CELEBRATION AND ITS INFRINGING "MIAMI SLICE" RESTAURANT

31. Meanwhile, on October 8, 2020, Carnival first announced that it would accept bookings for its newest ship the Carnival Celebration. Little was known about the ship at the time other than it was set to begin cruising in November 2022 and that "it would include many of the features" from Carnival's "Mardi Gras" sister ship such as "BOLT, the first roller coaster at sea." Attached herewith as **Exhibit E** are exemplary news articles regarding Carnival Celebration, including Carnival's October 8, 2020 news release. Exhibit E, at 2.

32. As foretold, Carnival officially took delivery of Carnival Celebration on November 2, 2022 in Finland. Its inaugural voyage departed from Southampton, England on November 6, 2022 ending in Miami, Florida after a fourteen (14) day itinerary.

33. After arriving from Europe, beginning on November 21, 2022, Carnival Celebration has provided Caribbean cruises departing from the Port of Miami.

34. It came as shock to Miami Slice when inaugural passengers began documenting an astonishingly similar "Miami Slice" quick service pizza restaurant as part of a Biscayne 820 "zone" of the Carnival Celebration. For example, on December 6, 2022 the blog Eat Sleep Cruise described the infringing Miami Slice as a "pizzeria [that] features a walk-up counter where guests can order fresh out of the oven pizza slices or personal-sized pies. You can then enjoy your pizza in the nearby seating area or take it to-go to enjoy anywhere around the ship." Exhibit E, at 9-10.



Eat Sleep Cruise blog, Exhibit E, at 10

35. Even the menus are astonishingly similar. Both feature exactly five types of pizzas, with the first two types being margherita and pepperoni, and both display "Miami Slice" prominently at the top in similarly slender, all-capital font with a logo placed therebetween.

 

Available here at  
Eat Sleep Cruise blog

Available here at  
miamislicepizza.com/menu

36. Thus, Carnival first used its infringing "Miami Slice" mark in international commerce on November 6, 2022, and first used its infringing "Miami Slice" mark in South Florida on November 21, 2022 corresponding to Carnival Celebration's first cruise offered from the Port of Miami.

37. Carnival's infringing restaurant is of significantly lower quality than Miami Slice's exceptional, widely praised artisanal pizza. One cruise blog politely characterized Carnival's infringing restaurant as low quality: "[w]hile not the best pizza at sea, it features five different options and remains open until the wee morning hours for late night sacks." Exhibit E, at 42. Another sophisticated food review critic travelled to Miami, tried to eat at Miami Slice with knowledge of its "crazy rating" but could not because the restaurant was sold out that night, then tried Carnival's "Miami Slice" pizza and gave it a "0" rating because it "doesn't even taste like

pizza," while "wonder[ing] if there was going to be a lawsuit" between the two over the common usage of the MIAMI SLICE mark.[3]

38. By the time a Carnival passenger could dine at Carnival Celebration's infringing Miami Slice restaurant, Miami Slice was well established in South Florida and throughout the nation as a source of high-quality restaurant services serving exceptional, artisanal pizza that is "no doubt" the best pizza in Miami.

39. Since Carnival Celebration began sailing, evidence of actual consumer confusion between Miami Slice and the infringing restaurant on Carnival Celebration has already emerged. At least one prospective passenger on the Carnival Celebration contacted Miami Slice on January 25, 2023 believing that Miami Slice was the operator of the infringing restaurant:

> Good Morning!
>
> My family is going on a cruise in April and I saw that your pizza is served on it (Carnival Mardi Gras – correct me if I'm wrong). My son has an egg allergy but loves pizza! Does your pizza dough contain egg?
>
> Thank you in advance!

40. Upon information and belief, Carnival was well-aware of Miami Slice and its senior rights to the MIAMI SLICE trademark. Carnival is a sophisticated entity that almost certainly runs regular clearance searches of trademarks it intends to adopt, and such a search would have revealed the Miami Slice U.S. federal registration. Moreover, Carnival was undoubtedly aware of Miami Slice's growing popularity at least in the South Florida market.

---

[3] Video available at https://www.youtube.com/watch?v=RN8hZNNRWNw&t=1s

## COUNT I – REGISTERED TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114)

41. Miami Slice hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 40 as though fully set forth herein.

42. Miami Slice is the owner to all rights, title, and interest in and to the mark MIAMI SLICE as used for restaurant services and for the sale of food, particularly pizza and related consumable items such as beverages and desserts.

43. The MIAMI SLICE mark is registered with the United States Patent and Trademark Office.

44. Miami Slice uses the MIAMI SLICE mark in commerce in the United States.

45. The MIAMI SLICE mark is a strong, distinctive, valid, and enforceable trademark.

46. The MIAMI SLICE mark has become popularized in the public mind so that consumers identified the mark's registered "restaurant services" with Miami Slice.

47. The MIAMI SLICE mark has been in use since as early as March 27, 2019.

48. During this time, the MIAMI SLICE mark has been extensively advertised and promoted leading to a consumer recognized connection between Miami Slice and the MIAMI SLICE mark.

49. Carnival's intentional copying of the MIAMI SLICE mark, and using it to offer identical, albeit lower quality, goods and services through a highly similar quick-service format featuring a similar menu and theming further supports that the MIAMI SLICE mark has acquired secondary meaning.

50. Carnival's use of the "Miami Slice" mark is confusingly similar to Miami Slice's registered MIAMI SLICE mark.

51.     Carnival's restaurant services aboard the Carnival Celebration in connection with its infringing "Miami Slice" mark, both word mark and stylized, is therefore likely to cause confusion, to cause mistake, and/or to deceive as to affiliation, connection, or association between Miami Slice and Carnival, and is likely to cause members of the public to believe, incorrectly, that Carnival's products and services are provided by, or under the sponsorship or approval of, Miami Slice; whereas in fact, Miami Slice does not approve of Carnival's appropriation of its trademarks for Carnival's products, services, or businesses.

52.     Miami Slice has no adequate remedy at law and has sustained indivisible injury and damage caused by Carnival's conduct. Absent an entry of an injunction by this Court, Carnival will continue to wrongfully reap profits and Miami Slice will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

53.     Carnival's unlawful conduct is in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

54.     Miami Slice is entitled to injunctive relief against Carnival, restraining Carnival from further acts of infringement of the MIAMI SLICE trademark and, after trial, recovery of any damages (to the extent calculable) proven to have been caused by reason of Carnival's unlawful conduct.

**COUNT II – TRADEMARK INFRINGEMENT**
**(15 U.S.C. § 1125(a))**

55.     Miami Slice hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 40 as though fully set forth herein.

56.     Miami Slice is the owner to all rights, title, and interest in and to the mark MIAMI SLICE as used for restaurant services and for the sale of food, particularly pizza and related consumable items such as beverages and desserts.

57. Miami Slice uses the MIAMI SLICE mark in commerce in the United States.

58. The MIAMI SLICE mark is a strong, distinctive, valid, and enforceable trademark.

59. The MIAMI SLICE mark has become popularized in the public mind so that consumers identified the marked restaurant services and food and beverage products with Miami Slice.

60. The MIAMI SLICE mark has been in use since as early as March 27, 2019.

61. During this time, the MIAMI SLICE mark has been extensively advertised and promoted leading to a nationally recognized, or at least South Florida regionally recognized, connection between Miami Slice and the MIAMI SLICE mark.

62. Carnival's intentional copying of the MIAMI SLICE mark, and using it to offer identical, albeit lower quality, goods and services through a highly similar quick-service format featuring a similar menu and theming further supports that the MIAMI SLICE mark has acquired secondary meaning.

63. Carnival's use of the "Miami Slice" word mark is confusingly similar to Miami Slice's MIAMI SLICE mark. Carnival's stylized use of the "Miami Slice" mark is also confusingly similar to Miami Slice's stylized MIAMI SLICE mark.

64. Carnival's restaurant services aboard the Carnival Celebration in connection with its infringing "Miami Slice" mark, both word mark and stylized, is therefore likely to cause confusion, to cause mistake, and/or to deceive as to affiliation, connection, or association between Miami Slice and Carnival, and is likely to cause members of the public to believe, incorrectly, that Carnival's products and services are provided by, or under the sponsorship or approval of, Miami Slice; whereas in fact, Miami Slice does not approve of Carnival's appropriation of its trademarks for Carnival's products, services, or businesses.

65. Miami Slice has no adequate remedy at law and has sustained indivisible injury and damage caused by Carnival's conduct. Absent an entry of an injunction by this Court, Carnival will continue to wrongfully reap profits and Miami Slice will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

66. Carnival's unlawful conduct is in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

67. Miami Slice is entitled to injunctive relief against Carnival, restraining Carnival from further acts of infringement of the MIAMI SLICE trademark and, after trial, recovery of any damages (to the extent calculable) proven to have been caused by reason of Carnival's unlawful conduct.

**COUNT III – TRADEMARK INFRINGEMENT**
**(Florida Common Law)**

68. Miami Slice hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 40 as though fully set forth herein.

69. Miami Slice is the owner to all rights, title, and interest in and to the mark MIAMI SLICE as used for restaurant services and for the sale of food, particularly pizza and related consumable items such as beverages and desserts.

70. Miami Slice uses the MIAMI SLICE mark in commerce in the State of Florida.

71. The MIAMI SLICE mark is a strong, distinctive, valid, and enforceable trademark.

72. The MIAMI SLICE mark has become popularized in the public mind so that the consumers in the state, and particularly in South Florida, identified the marked restaurant services and food and beverage products with Miami Slice.

73. The MIAMI SLICE mark has been in use since as early as March 27, 2019.

74. During this time, the MIAMI SLICE mark has been extensively advertised and promoted leading to a nationally recognized, or at least South Florida regionally recognized, connection between Miami Slice and the MIAMI SLICE mark.

75. Carnival's intentional copying of the MIAMI SLICE mark, and using it to offer identical, albeit lower quality, services through a highly similar quick-service format featuring a menu and theming further supports that the MIAMI SLICE mark has acquired secondary meaning.

76. Carnival's use of the "Miami Slice" word mark is confusingly similar to Miami Slice's MIAMI SLICE mark. Carnival's stylized use of the "Miami Slice" mark is also confusingly similar to Miami Slice's stylized MIAMI SLICE mark.

77. Carnival's restaurant services aboard the Carnival Celebration in connection with its infringing "Miami Slice" mark, both word mark and stylized, is therefore likely to cause confusion, to cause mistake, and/or to deceive as to affiliation, connection, or association between Miami Slice and Carnival, and is likely to cause members of the public to believe, incorrectly, that Carnival's products and services are provided by, or under the sponsorship or approval of, Miami Slice; whereas in fact, Miami Slice does not approve of Carnival's appropriation of its trademarks for Carnival's products, services, or businesses.

78. Miami Slice has no adequate remedy at law and has sustained indivisible injury and damage caused by Carnival's conduct. Absent an entry of an injunction by this Court, Carnival will continue to wrongfully reap profits and Miami Slice will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

79. Carnival's unlawful conduct is in violation of Florida common law.

80. Miami Slice is entitled to injunctive relief against Carnival, restraining Carnival from further acts of infringement of the MIAMI SLICE trademark and, after trial, recovery of any

damages (to the extent calculable) proven to have been caused by reason of Carnival's unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Miami Slice demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Carnival as follows:

A.     That Carnival and its agents, representatives, servants, employees, and all those acting in concert or participation therewith be enjoined temporally and permanently from:

   i.     advertising, promoting, distributing, selling or offering to sell any good or service under the MIAMI SLICE mark, or any mark or design similar thereto;

   ii.    using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or products of Carnival as being sponsored by, authorized by, endorsed by, or in any way associated with Miami Slice; and

   iii.   representing in any manner or by any method whatsoever, either express or implied, that goods, services or other products provided by Carnival are sponsored, approved, authorized by or originate from Miami Slice or otherwise taking any action likely to cause confusion, mistake or deception as to the origin, approval, sponsorship or certification of such goods, products, or services.

B.     That Carnival and its agents, representatives, servants, employees, and all those acting in concert or participation therewith take affirmative steps to dispel such false information that heretofore have been created by their use of the MIAMI SLICE trademark including, but not limited to, removing and recalling all uses of the MIAMI SLICE trademark in its ships and on its marketing and promotional material including the Carnival website, as well as publicly posting an affirmative notice that Carnival is unaffiliated with Miami Slice.

C. That within thirty days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Miami Slice's attorneys a written report under oath setting forth in detail the manner in which Carnival has complied with the ordered injunctive relief.

D. That Carnival account to Miami Slice for its profits and damages sustained by Carnival, to the extent calculable, arising from the foregoing unlawful acts.

E. That in accordance with such accounting, Miami Slice be awarded judgment for three times such profits or damages (whichever is greater).

F. That Miami Slice be awarded its cost and attorneys' fees.

G. That Miami Slice be awarded such other and further relief as the Court may deem equitable.

## JURY DEMAND

Miami Slice demands a trial by jury on all issues so triable.

Date: July 5, 2023       Respectfully submitted by,

**THE BRICKELL IP GROUP, PLLC**
1101 Brickell Avenue
South Tower, Suite 800
Miami FL, 33131
Tel: 305-728-8831
Fax: 305-428-2450

*/s/ A. Robert Weaver*
**A. Robert Weaver**
Fla. Bar No. 92132
Email: rweaver@brickellip.com
**Richard Guerra**
Fla. Bar No. 689521
Email: rguerra@brickellip.com
**Javier Sobrado**
Fla. Bar No. 44992

18

Email: jsobrado@brickellip.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via Electronic Mail on July 5, 2023 on all counsel or parties of record via CM/ECF filing.

*/s/ A. Robert Weaver*
A. Robert Weaver