IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:23-cv-21347

**MIAMI SLICE PIZZA, LLC**,

    Plaintiff/Counter-Defendant,

v.

**CARNIVAL CORPORATION**,

    Defendant/Counter-Plaintiff.

## CARNIVAL'S MOTION TO BIFURCATE

Pursuant to Federal Rule of Civil Procedure 42(b), Defendant/Counter-Plaintiff Carnival Corporation ("Carnival"), by and through undersigned counsel, respectfully moves this Court to bifurcate the issues of ownership, liability and damages to expedite and economize this dispute. As grounds, Carnival states as follows:

### I. STATEMENT OF FACTS

On April 10, 2023, Plaintiff/Counter-Defendant Miami Slice Pizza, LLC ("MSP") filed its Complaint against Carnival, alleging infringement of its purported MIAMI SLICE trademark. ECF No. 1. Specifically, MSP alleged that "Carnival's use of the 'Miami Slice' word mark is confusingly similar to Miami Slice's MIAMI SLICE mark," registered on the Supplemental Register of the U.S. Patent and Trademark Office ("USPTO") on August 20, 2019. *Id*. at ¶ 49.

This case involves, among other things, a stark threshold question of fact, namely whether MSP has any enforceable rights in the phrase MIAMI SLICE. MSP claims that its rights flow from a trademark registration initially obtained by MSP's predecessor Sotavento Ventures, LLC

("Sotavento"). For background, it is undisputed that Sotavento's then-pending trademark application for MIAMI SLICE was initially refused by the USPTO on the basis that "the mark 'MIAMI SLICE' is merely primarily geographically descriptive of [MSP's] services." The USPTO concluded that:

> The wording "MIAMI" is a well-known geographic location, and the applicant is based in Miami, Florida, creating an association between the services and the place. Further, the wording "SLICE" is defined as "An often wedge-shaped piece cut from a larger, usually circular object [such as] a slice of pizza", and is therefore merely descriptive of applicant's "Restaurant services".

Sotavento's application was subsequently amended to the Supplemental Register, which creates no substantive rights. *See McCarthy on Trademarks and Unfair Competition* § 19:36 ("[A supplemental registration] is not *prima facie* evidence of anything except that the registration issued."). Indeed, the very presence of MIAMI SLICE on the Supplemental Register "indicates a preliminary determination that the mark is not distinctive" of MSP's services. *Id.* (*citing In re Consolidated Foods Corp.*, 200 U.S.P.Q. 477, n.2 (TTAB 1978)(Supplemental Registration is an admission of descriptiveness).

On July 5, 2023, MSP filed its First Amended Complaint ("FAC"), which largely mirrors the claims in MSP's initial Complaint. ECF No. 9. Carnival responded to the FAC on July 19, 2023, denying the salient allegations that Carnival's use of the generic phrase MIAMI SLICE to identify a Miami-style of pizza purportedly infringes any alleged rights MSP claims in the phrase. ECF No. 12. Carnival further asserted a counterclaim for cancellation of MSP's Supplemental Registration on the basis that the phrase is comprised of a combination of the generic terms "Miami" and "slice," which retain their generic significance with respect to pizza restaurant services. *Id.*

2

To prevail and establish infringement, MSP is required to demonstrate that: (1) it holds a valid, protectable mark that has priority of use; and (2) a likelihood of confusion exists between the parties' respective marks, such that consumers encountering these marks would likely believe they emanate from the same source or are in some way affiliated. *See Dieter v. B & H Indus. Of Southwest Florida, Inc.*, 880 F.2d 322, 326 (11th Cir. 1989). As detailed below, Carnival disputes that MSP has any rights to enforce and now seeks an order bifurcating the issues of ownership, liability and damages for purposes of convenience and judicial economy.

## II.  ANALYSIS

**A.     Legal Standard**

Pursuant to Rule 42(b), Federal Rules of Civil Procedure, a district court may bifurcate a trial and/or discovery on a contested matter where it is convenient, where it prevents prejudice, where it is conducive to judicial economy, or where separately triable issues arise. *See In re Koger*, 261 B.R. 528, 531 (Bankr. M.D. Fla. 2001). A determination of whether to bifurcate trial and/or discovery is left to the broad discretion of a trial court. *Harrington v. Cleburne County Board of Educ.*, 251 F.3d 935, 938 (11th Cir. 2001). The standard for permitting bifurcation is not a high one, and a "district court's concern for clarifying the issues to be tried suffices to permit the court to separate the trials." *Id*.

Furthermore, a trial judge has broad discretion to control the course of discovery and to stay discovery until preliminary questions that may dispose of the case are determined. *National Independent Theatre Exhibitors v. Buena Vista Dist. Co.*, 748 F .2d 602, 609 (11th Cir. 1984)(noting trial court's broad discretion to manage discovery); *R.E.F. Golf Co. v. Roberts Metals, Inc.*, No. 92-577, 1992 WL 161041, *3 (M.D. Fla. June 29, 1992)("[t]he court has broad

discretion to stay discovery until preliminary questions that may dispose of the case are determined").

**B.     Bifurcation is Appropriate Here**

Bifurcating the case to separate the preliminary issue, namely, the alleged validity, scope and priority of rights held by MSP, from the trademark infringement and other liability issues in MSP's claims, is appropriate under Rule 42(b) because bifurcation will expedite resolution of this case, conserve judicial resources and avoid unnecessary and otherwise inevitable prejudice to Carnival. In addition, the Court should stay discovery as to the trademark infringement and unfair competition claims in order to carry out the goals and purpose of Rule 42(b). Discovery on such issues is often time-consuming and expensive, and frequently contentious. Neither the parties nor the Court should expend resources addressing those issues pending a determination of the extent and scope of rights purportedly held by MSP. Only after determining whether MSP possesses any enforceable trademark rights can the Court be certain that discovery related to liability and relief will be necessary. Furthermore, entering a stay of discovery as to the liability and relief issues will allow the parties to engage in focuses, specific discovery aimed solely at determining the parties' respective rights.

Indeed, many federal courts have bifurcated the issues of ownership of intellectual property rights from issues of infringement. *See, e.g., St. Charles Man. Co. v. Mercer*, 737 F .2d 891, 892 (11th Cir. 1983) (liability stage and damages stage); *Isaly Co. v. Kraft, Inc.*, 619 F . Supp. 983, 998 (M.D. Fla. 1985) (noting that the court approved bifurcation in a trademark case, reserving damages, if any, for a later proceeding); *Brooks Shoe Manufacturing Co., Inc. v. Suave Shoe Corp.*, 533 F. Supp. 75, 84 n.16 (S.D. Fla. 1981)(noting the bifurcation of a trademark trial with respect

4

to the liability and damage issues, where a finding of no liability relegates the need to hear evidence on the issue of damages unnecessary); *see also Taylor Corp. v. Four Seasons Greetings, LLC*, 171 F. Supp. 2d 970, 2003 WL 23527789, at *1 (D. Minn. 2003); *Victor Co., L.L.C. v. Ortho Organizers, Inc.*, Civ.A. No. 96-2123-GTV, 1996 U.S. Dist. LEXIS 18271, 1996 WL 704404, at *2 (D. Kan. Nov. 5, 1996); *City of Newark v. Beasley*, 883 F. Supp. 3, 4 (D.N.J. 1995); *Kahn v. General Motors Corp.*, 865 F. Supp. 210, 215 (S.D.N.Y. 1994). This is appropriate because if it is determined that a plaintiff does not possess ownership rights, there is no need to conduct a second trial on the infringement-related or damages issues. *See Victor Co.*, 1996 U.S. Dist. LEXIS 18271, 1996 WL 704404, at *2. In such cases, bifurcation of discovery is also appropriate, and will not serve to prejudice the plaintiff. *Id.*

In similar trademark and patent disputes, courts generally consider the following factors in determining whether to order bifurcation: (1) separability of the issues; (2) simplification of discovery and the conservation of resources; (3) prejudice to parties; (4) the effect of bifurcation on the potential for settlement; and (5) suitability of bifurcating trial but not discovery. *Silvers v. Google Inc.*, 2006 U.S. Dist. LEXIS 110447, at *11-12 (S.D. Fla. Feb. 6, 2006). These factors are addressed below.

1.   **Separability of the Issues**

The separability inquiry involves measurement of the degree of evidentiary entanglement among the issues to be bifurcated. *Id.* (*citing F&G Scrolling Mouse v. IBM Corp.*, 190 F.R.D. 385, 387-90 (M.D. N.C. 1999)). In this case, the question of ownership involves different factual and legal determinations, compared to the infringement and damages issues. *Id.* Ownership requires proof of "both appropriation and use in trade; and [] ownership of a mark and the exclusive right

to a mark belongs to the one who first uses the mark on goods placed on the market." *Signature Guardian Sys., Inc. v. Lee*, 209 U.S.P.Q. 81, 87 (T.T.A.B. 1980). While MSP owns a registration on the Supplemental Register, "registration of a trademark confers only procedural advantages and does not enlarge the registrant's rights, for ownership of the trademark rests on adoption and use, not on registration." *Turner v. HMH Publishing Co.*, 380 F.2d 224, 228 (5th Cir. 1967). Infringement, on the other hand, requires proof that the alleged infringer's "actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117, 125 S. Ct. 542, 160 L. Ed. 2d 440 (2004).

The two issues of ownership and infringement are sufficiently distinct, and there are no areas of substantial evidentiary overlap. There is no danger that bifurcation will result in duplicative presentation of evidence. *Silvers*, 2006 U.S. Dist. LEXIS 110447, at *14. Accordingly, this factor weighs in favor of bifurcation.

### 2. Simplification of Discovery and Conservation of Resources

The simplification inquiry involves determining whether bifurcation of trial and/or discovery might result in a faster and cheaper resolution to a dispute. *F&G*, 190 F.R.D. at 390. "The cost of discovery and trial preparation, including expert witnesses, may convince the court that a stay of discovery and a second trial is best." *Id.* Thus, a measurement of a case's supposedly unique and compelling complexity should be made at this juncture." *Silvers*, 2006 U.S. Dist. LEXIS 110447, at *14.

This factor also weighs in favor of bifurcation. Separating the issues of ownership and infringement will allow a jury to focus on distinct issues without confusion of factual questions

that may be only tangentially relevant. Additionally, discovery of the threshold issue of ownership can proceed without delay by the more complicated discovery relating to infringement and damages.[1] *Id.* at *15.

### 3. Prejudice to Parties

The prejudice inquiry involves determining the cost of bifurcation to each party. *F&G*, 190 F.R.D. at 391. There is no delay created by bifurcation, as the preliminary issue of ownership is relatively less complicated than the infringement and damages issues. *Silvers*, 2006 U.S. Dist. LEXIS 110447, at *16. In addition, bifurcation potentially reduces costs for all parties. *Id.* ("If Google demonstrates that Silvers has no enforceable trademark rights, then the case becomes a non-jury action for declaratory and injunctive relief, reducing the costs of a lengthy jury trial for all parties. Thus, bifurcation should not prejudice any party.").

In contrast, MSP will suffer no prejudice if this Court bifurcates the determination of trademark rights from the infringement and other liability claims. If Carnival can demonstrate that MSP has no enforceable trademark rights in the first instance, the case collapses into a non-jury claim for cancellation, which may be disposed of relatively rapidly. Thus, bifurcation is appropriate.

### 4. Effect of Bifurcation on Potential for Settlement

Here, bifurcation and the savings in cost of expensive damage discovery may provide greater means for compromise and aid in settlement. *F&G*, 190 F.R.D. at 392. This case does not present a situation where bifurcation would likely be counter-productive to settlement. Rather, a

---

[1] MSP has already sought discovery related to highly confidential and wholly irrelevant agreements that contain Carnival's trade secrets in support of MSP's purported damages analysis. Thus, bifurcation of these issues will eliminate potential discovery disputes related to these documents.

delay in lengthy damages discovery should provide savings to all parties, and thereby provide greater means for settlement. *Silvers*, 2006 U.S. Dist. LEXIS 110447, at *17. Accordingly, this factor also weighs in favor of bifurcation.

### 5. Suitability of Bifurcating Trial but not Discovery

While a court may analyze these factors and determine that trial should be bifurcated but that discovery should nevertheless go on unimpeded, "this option should be reserved for situations where bifurcation is ordered solely to alleviate jury confusion, or where the inherent nature of a matter does not reveal whether or not any 'evidentiary overlap' will arise." *Silvers*, 2006 U.S. Dist. LEXIS 110447, at *17-18. In this case, none of the above conditions is present, and bifurcation of the discovery phase is appropriate in the interests of convenience, judicial economy and simplification of the issues. *Id.*

### III. CONCLUSION

Given that each of the factors favors bifurcating the issues of ownership, liability and damages, Carnival respectfully requests that the Court separate these issues and stay discovery all matters unrelated to MSP's purported ownership of the asserted MIAMI SLICE trademark.

DATED: October 30, 2023

Respectfully submitted,

s/Jaime Rich Vining
By: **David K. Friedland**
Florida Bar No. 833479
Email: dkf@friedlandvining.com
**Jaime Rich Vining**
Florida Bar No. 030932
Email: jrv@friedlandvining.com
**FRIEDLAND VINING, P.A.**
9100 S. Dadeland Blvd., Suite 1620
Miami, FL 33156
(305) 777-1721 – telephone
(305) 456-4922 – facsimile

8

**FRIEDLAND VINING, P.A.**
(305) 777-1721 • (305) 456-4922 telecopier

*Counsel for Defendant/Counter-Plaintiff*

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1, undersigned counsel for Defendant/Counter-Plaintiff certifies that she has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues raised herein, and states the none of the issues has been resolved.

/s/Jaime Rich Vining
Jaime Rich Vining

## CERTIFICATE OF SERVICE

I hereby certify that on the above referenced date, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the Manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

**Richard Guerra**
**Javier Sobrado**
**Arthur Robert Weaver**
The Brickell IP Group, PLLC
1101 Brickell Avenue South Tower, Suite 800
Miami, FL 33131
Email: rguerra@brickellip.com
Email: JSobrado@BrickellIP.com
Email: rweaver@brickellip.com

/s/Jaime Rich Vining
Jaime Rich Vining