UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:23-cv-21347-JEM

MIAMI SLICE PIZZA, LLC, a Florida
limited liability company,

    Plaintiff/Counter-Defendant,

v.

CARNIVAL CORPORATION, a Florida
corporation

    Defendant/Counter-Plaintiff.
_____/

**MIAMI SLICE'S OPPOSITION TO CARNIVAL'S MOTION TO BIFURCATE**

Plaintiff/Counter-Defendant Miami Slice Pizza, LLC, ("Miami Slice") by and through undersigned counsel, hereby Opposes Defendant/Counter-Plaintiff Carnival Corporation's ("Carnival") Motion to Bifurcate [D.E. 19] (the "Motion"), and states as follows:

**I.     INTRODUCTION**

As trademark disputes go, this one is rather straightforward. Miami Slice owns and operates a restaurant just a few blocks from the Port of Miami, where Carnival cruise ships regularly depart. Miami Slice has developed a cult-like fame drawing immense popularity on social media, rave reviews from celebrities, and a customer line that regularly wraps around the block. *See* Amended Complaint [D.E. 9], at ¶¶ 1-2, 13-30. About a year ago, Carnival launched a new cruise ship out of the Port of Miami called the Carnival Celebration which, to Miami Slice's dismay, included an astonishingly similar quick-service pizza-focused restaurant identically called "Miami Slice." *Id*., ¶¶ 3-7, 31-40. Miami Slice's claims for trademark infringement soon followed.

1

Prevailing in a trademark infringement action requires Miami Slice "to demonstrate that (1) it had prior rights to the mark at issue; and (2) [Carnival] adopted a mark or name that was the same, or confusingly similar to Plaintiff's trademark, such that consumers were likely to confuse the two." *Chanel, Inc. v. Sea Hero*, 234 F.Supp.3d 1255, 1260-61 (S.D. Fla. 2016). The issues presented here are run-of-the-mill. Defendants typically challenge one or both of these prongs in almost every trademark dispute, and yet Carnival feels so supremely confident that "Miami Slice" is not a protectible term that it is moving to bifurcate this matter so as to allegedly avoid burdening the parties and Court with litigating anything other than one of its affirmative defenses and matching counterclaim. *See* Carnival's Answer [D.E. 12], at 8-16.

At least that is how Carnival's Motion reads. But, tucked away in the sole footnote to Carnival's Motion lies the real reason that Carnival is moving to bifurcate this matter. The Parties' discovery efforts were sailing along smoothly until Miami Slice requested highly relevant financial and brand licensing documentation from Carnival, and Carnival has steadfastly refused to produce this documentation. *See* Motion, at 7. Knowing full well that its objections are meritless,[1] the corporate behemoth that is Carnival is moving the Court to subject Miami Slice to separate discovery periods and separate trials that would necessarily cover duplicate and overlapping issues.

Such a bifurcation would pose a tremendous burden to Miami Slice and needlessly expend judicial resources, all simply because Carnival would rather not produce certain allegedly confidential documents even with a stipulated protective order in place. *See* Order [D.E. 18].

---

[1] The Parties contacted Magistrate Judge Becerra's chambers and obtained permission to extend the Local Rule 26.1 deadline until December 8th so that the parties could fully brief this Motion. For context, Miami Slice attaches herewith as **Exhibit A** Miami Slice's requests for production – the requests Carnival references in its footnote are Request Nos. 1-11. In short, several restaurants on Carnival ships use third-party marks such as Guy Fieri's "Guy's Burger Joint" and Shaquille O'Neal's "Big Chicken." Carnival's agreements with these third parties are highly relevant to establishing a reasonable royalty for "Miami Slice" had Carnival licensed the mark.

Avoiding this isolated discovery dispute is not a reason to subject the parties and the Court to multiple trials. Carnival's Motion should be denied.

## II. ARGUMENT

### A. Legal Standard for Bifurcation

While the decision to bifurcate is within the discretion of the Court, the moving party nevertheless bears a "***heavy burden***" of demonstrating the benefits of bifurcation because ***bifurcation is not favored and is "the exception rather than the rule."*** *Macneil v. Bengal Properties, Inc.*, No. 20-cv-62038-RS, 2022 WL 2231010, at *1 (S.D. Fla. Feb. 10, 2022); *Transamerica Life Insurance Co. v. Wilbanks*, No. 8:15-cv-780, 2015 WL 18230476, at *1 (M.D. Fla. Oct. 27, 2015); *Estate of Carrillo v. Federal Deposit Insurance Corp.*, No. 11-cv-22668-CMA, 2012 WL 13013081, at *1 (S.D. Fla. April 25, 2012). Bifurcation is only appropriate where it "would further convenience, avoid prejudice, or promote efficiency." Fed. R. Civ. P. 42(b).

As a general matter, Carnival's Motion largely tracks the unpublished bifurcation decision in *Silvers v. Google Inc.*, 05-80387-CIV-RYSKAMP, 2006 WL 8435148 (S.D. Fla. Feb. 7, 2006).[2] That decision is outdated, inapplicable, and according to Westlaw® has never been cited for its bifurcation decision. That decision heavily relied on "the standards applied to bifurcation in patent litigation cases." *Silvers*, at *3. In the past twenty years, the Federal Circuit has urged district courts to bifurcate less, not more, often. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, n.7 (Fed. Cir. 2011) ("The difficulties posed with respect to these issues are directly tied to the court's decision to bifurcate all of these issues for both discovery and trial. The circumstances here point out the dangers with a hard and fast rule regarding such bifurcation.") Consequentially, district

---

[2] Carnival also occasionally cites *F & G Scrolling Mouse, L.L.C. v. IBM Corp.*, 190 F.R.D. 385 (M.D.N.C. 1999), but that decision is of no aid since that court denied that defendant's motion to bifurcate.

courts in this District have been far more disfavored to bifurcate intellectual property disputes over a party's objection. Additionally, the *Silvers* decision was far more complicated than this dispute and better leant itself to bifurcation. *Silvers* was a reverse confusion case stemming from an individual's early registration of the domain "googles.com." *Silvers*, 2006 WL 8435148 at *1. That plaintiff essentially claimed prior intellectual property rights senior to Google. *Id*. Complicating that dispute was a cross-claim from another party alleging that it, not the plaintiff, actually owned the trademark rights to "Google." *Id*., at *2. Google also alleged that a different, third-party to the action owned certain trademark rights. *Id*. In short, the *Silvers* decision involved multiple entities mutually alleging ownership to "Google" or "Googles," a complicated situation inapplicable to this straight-forward dispute. This is a standard fare trademark infringement action that does not merit bifurcation, particularly in view of district courts' trending towards disfavoring bifurcation in intellectual property disputes.

### B. Ownership, Infringement, and Damages Have Overlapping Issues

Without explanation or support, Carnival contends that "the two issues of ownership and infringement are sufficiently distinct, and there are no areas of substantial evidentiary overlap." Motion, at 6. Whether "Miami Slice" is protectible as a trademark, and not an unprotectible "generic phrase" as alleged by Carnival (Motion, at 2) is an inquiry that overlaps with infringement and damages.

The backbone of trademark infringement is the likelihood of consumer confusion, and the Eleventh Circuit considers several factors when determining whether a likelihood of confusion exists. *Florida Intern. University Bd. of Trustees v. Florida Nat. University, Inc.*, 91 F.Supp.3d 1265, 1274 (S.D. Fla. 2015). The very first factor requires classifying whether the mark is ***generic***, descriptive, suggestive, or arbitrary. *Id*. Thus, having a stand-alone trial on the alleged genericness

of "Miami Slice" is unnecessary considering that issue already overlaps with the first likelihood of confusion factor.[3] Extending the logic of Carnival's Motion *ad absurdum*, Carnival essentially contends that the most efficient option is to have seven separate trials – one for each likelihood of confusion factor – and then have an eighth trial on damages.

Speaking of damages, that also has overlapping issues. Miami Slice is pursuing actual damages in the form of a reasonable royalty. This Court has previously recognized that a reasonable royalty is an appropriate measure of actual damages in trademark infringement disputes. *See Peace United, Ltd. v. 1906 Collins, LLC*, No. 17-cv-21881-JEM, 2022 WL 2290528 (S.D. Fla. June 24, 2022). Although more commonly used in patent infringement disputes, the *Georgia-Pacific* factors are an acceptable guide to establishing this royalty. *PODS Enterprises, Inc. v. U-Haul International, Inc.*, 2014 WL 12628663, at*2 (M.D. Fla. June 27, 2013). Again, the strength of the intellectual property – including the "commercial success" and "popularity" of the intellectual property (8th *Georgia-Pactific* factor) and the "nature" of the intellectual property (10th *Georgia-Pacific* factor) – overlap with the strength of the "Miami Slice" trademark. *See Spanakos v. Aronson*, No. 17-cv-80965-DMM, 2019 WL 10058877, at *2 (S.D. Fla. April 3, 2019) (listing *Georgia-Pacific* factors).

Put another way, Carnival will undoubtedly argue that Miami Slice's trademark rights are so weak that they are unlikely to cause consumer confusion or command a high royalty rate. Contrary to Carnival's assertion, adjudicating Miami Slice's ownership of protectible trademark rights overlaps with the portions of the case Carnival seeks to bifurcate out.

---

[3] This drives home the difference in this dispute versus the *Silvers* decision. *See supra*, at II.B. *Silvers* concerned which of several parties could claim trademark ownership rights. Here, the issue is whether Miami Slice owns a valid and protectible trademark. There is no complicated web of parties to untangle like there was in *Silvers*.

5

### C. Bifurcation Will Complicate, Not Simplify, the Litigation

Carnival contends that bifurcating the issues "will allow a jury to focus on distinct issues without confusion of factual questions that may be only tangentially relevant." Motion, at 6-7. While Carnival may be concerned with the average South Florida juror's ability to maintain focus, Miami Slice has greater confidence in our local jurors as would other courts weighing this argument. *See e.g. Nylok Fastener Corp. v. Industrial Nut Corp.*, 122 F.R.D. 512, 513 (N.D. Ohio 1988) (denying bifurcation and noting that trademark infringement issues of liability and damages "are routinely submitted to juries, who customarily consider damages in the same proceeding.").

The *single* discovery issue raised by Carnival should not be sufficient justification to subject Miami Slice or the Court to doubling the proceeding. Motion, at 7. There is nothing complicated about this issue, and Miami Slice anticipates that Judge Becerra can effectively adjudicate Carnival's objections, no doubt in Miami Slice's favor.

By contrast, Miami Slice anticipates a hypothetical "ownership" trial to be laced with a barrage of "relevancy" objections from Carnival, not unlike Carnival's objection to Miami Slice's written discovery, should Miami Slice dare to present evidence that is not laser focused on whether "Miami Slice" is a generic term. The easiest and simplest path for this litigation is a standard course considering that there are no "supposedly unique and compelling complexity [issues] at this juncture." Motion, at 6 (*citing Silvers*, 2006 WL 8435148, at *4).

### D. Miami Slice Will Be Prejudiced by Bifurcation

A bifurcation decision will undoubtedly increase the costs of litigation to the parties. "Granting defendant's motion would require the Court to conduct two full jury trials, each with its attendant periods for discovery, motion practice, pre-trial conferences and docketing considerations." *Nylok Fastener* 122 F.R.D. at 513. Carnival, a large publicly traded company with

6

far greater resources than Miami Slice, undoubtedly has no qualm delaying this lawsuit from full resolution. The increase to Carnival's legal fees for multiple trials is likely of minimal consequence. But for Miami Slice, in addition to the effectively doubling its legal fees, a delay of full adjudication of Miami Slice's claims prejudices Miami Slice as it is experiencing ongoing irreparable harm:

> Miami Slice's brand, goodwill, and reputation are all on the line in this lawsuit. Absent relief from the Court, Miami Slice's artisan pizza and popular quick service concept is likely be confusingly associated with cruise line food. Such confusion is an ongoing threat to crush this restaurant's success story. Indeed, in just a few months since Carnival Celebration first set-sail, actual consumer confusion has already begun to surface demonstrating that consumers are, and will continue, falsely associating the infringing restaurant on the Carnival Celebration with Miami Slice."

Amended Complaint, at ¶ 7.

Moreover, party prejudice may not always readily reveal itself. For example, the *Bosch* decision is a cautionary tale how decisions to bifurcate intellectual property disputes can lead to unanticipated prejudice. In *Bosch*, the decision to bifurcate liability and damages hindered the plaintiff at trial because of overlapping issues in discovery the plaintiff was precluded from obtaining. *Bosch*, 659 F.3d at 1155 ("Because the district court granted Pylon's motion to bifurcate damages, Bosch had no opportunity to obtain discovery relating to Pylon's financial condition, or that of its corporate parent before the court considered its request for injunctive relief.").

Again, the best course is to stay the course and deny bifurcation.

### E.  Staying Damages Discovery Will Chill Settlement Efforts

If the parties do not exchange financial documentation, then Miami Slice will not have the evidence it needs to fairly determine a reasonable royalty with the aid of an industry expert. Without this discovery, it is difficult for Miami Slice to fairly assess the value of its claims and what might constitute a reasonable resolution with Carnival. Contrary to Carnival's assertion,

Miami Slice does not anticipate "lengthy damage discovery." Motion, at 7-8. Miami Slice's ability to obtain discovery related to liability and damages will only drive forward settlement. Bifurcating the case will stall settlement.

## III. CONCLUSION

For at least the foregoing reasons, Miami Slice respectfully requests the Court deny Carnival's Motion to Bifurcate.

Date: November 13, 2023

Respectfully submitted by,

**THE BRICKELL IP GROUP, PLLC**
1101 Brickell Avenue
South Tower, Suite 800
Miami FL, 33131
Tel: 305-728-8831
Fax: 305-428-2450

*/s/ A. Robert Weaver*
**A. Robert Weaver**
Fla. Bar No. 92132
Email: rweaver@brickellip.com
**Richard Guerra**
Fla. Bar No. 689521
Email: rguerra@brickellip.com
**Javier Sobrado**
Fla. Bar No. 44992
Email: jsobrado@brickellip.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via Electronic Mail on November 13, 2023 on all counsel or parties of record via CM/ECF filing.

*/s/ A. Robert Weaver*
A. Robert Weaver