IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:23-cv-21347

**MIAMI SLICE PIZZA, LLC**,

    Plaintiff/Counter-Defendant,

v.

**CARNIVAL CORPORATION**,

    Defendant/Counter-Plaintiff.

### CARNIVAL'S OBJECTIONS AND RESPONSES TO MSP'S FIRST REQUEST TO PRODUCE

Defendant/Counter-Plaintiff Carnival Corporation ("Carnival"), by and through undersigned counsel, hereby responds to the First Request to Produce served by Plaintiff/Counter-Defendant Miami Slice Pizza, LLC's ("MSP") in accordance with the Federal Rules of Civil Procedure.

### GENERAL OBJECTIONS

1. Carnival objects to Definition No. 1 as including "agents, attorneys, or other representatives" to which Carnival is entitled to privilege or immunity under the Federal Rules of Civil Procedure or Federal Rules of Evidence.

2. Carnival objects to the First Request to Produce to the extent they call for information or documents that reflect or constitute, in full or in part, a privileged communication between attorney and client ("Privilege Objection").

3. Carnival objects to the First Request to Produce to the extent they call for information or documents which have been prepared or obtained either in anticipation of

Exhibit A

litigation or for hearing or trial, or which constitute the mental impressions, conclusions, opinions, or legal theories of counsel for Carnival ("Work Product Objection").

    4.      Carnival objects to the First Request to Produce to the extent they call for Carnival to take action other than (i) a reasonable and thorough search for information and documents responsive to the First Request to Produce maintained in the possession, custody or control of Carnival in locations where such information and documents are most likely to be found and (ii) a reasonable and thorough inquiry of those persons presently employed by Carnival most likely to have knowledge or information responsive to the First Request to Produce ("Harassment Objection").

    5.      Carnival objects to the First Request to Produce to the extent they call for (i) information which is not within the applicable scope of discovery in this action or (ii) information which is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence; and Carnival further objects to the First Request to Produce to the extent that they call for information or documents that are not available to Carnival ("Scope Objection").

    6.      Carnival objects to the First Request to Produce to the extent that the same are overly broad or overly inclusive and/or call for extensive research or investigation that would subject Carnival to annoyance, embarrassment, oppression, or undue burden or expense ("Burden Objection").

    7.      Carnival objects to the First Request to Produce to the extent that they are not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether

the burden or expense of the proposed discovery outweighs its likely benefit ("Proportionality Objection").

   8. Carnival objects to the First Request to Produce to the extent that the same are vague, indefinite, uncertain, and/or ambiguous and, thus, cannot be reasonably answered ("Vagueness Objection").

   9. Carnival objects to the First Request to Produce to the extent that they seek proprietary or confidential business information ("Confidentiality Objection"). Carnival will provide such information only pursuant to an appropriate Protective Order entered by the Court in this action.

   10. Carnival objects to the First Request to Produce to the extent that they attempt to impose obligations upon Carnival that are inconsistent with or greater than the obligations imposed by the Federal Rules of Civil Procedure or any orders of the United States District Court for the Southern District of Florida.

   11. The foregoing General Objections are hereby incorporated by reference in each of the following responses of Carnival to the First Request to Produce, as if such General Objections were set forth verbatim in such responses.

3

12. By answering the First Request to Produce, Carnival does not in any way waive or intend to waive, but instead intends to preserve, all objections as to the competency, relevancy, materiality, and admissibility of the answers or the subject matter thereof. Carnival reserves the right to supplement, amend, or correct all or part of the responses provided herein.

### SPECIFIC OBJECTIONS AND RESPONSES TO THE FIRST REQUEST TO PRODUCE

**Request No. 1:**

Copies of all agreements regarding Carnival's licensed use of "Emeril" or "Emeril Lagasse" in connection with any goods or services provided aboard a Carnival ship, including but not limited to the restaurants "Emeril's Bistro 1396," "Emeril's Bistro 1397," and "Emeril's Bistro 717."

**Response:** Carnival objects to Request No. 1 on the basis of the Work Product, Scope, Burden, Proportionality and Confidentiality Objections. Specifically, Carnival objects to Request No. 1 on the basis that it goes beyond what is relevant to the claims or defenses in this case, is not reasonably calculated to lead to relevant evidence concerning MSP's trademark infringement or unfair competition claims, and is not proportional to the needs of the case. Agreements with unrelated third parties regarding unrelated trademarks have no bearing on whether (i) MSP holds a valid, protectable mark that has priority of use; and (ii) a likelihood of confusion exists between the parties' purported use of the phrase MIAMI SLICE, such that consumers encountering these marks would likely believe they emanate from the same source or are in some way affiliated. Request No. 1 constitutes an impermissible fishing expedition into documents not related to the alleged claims or defenses.

**Request No. 2:**

Copies of all agreements regarding Carnival's licensed use of "Emeril" or "Emeril Lagasse" in connection with any goods or services provided aboard the Carnival Celebration, including but not limited to the restaurant "Emeril's Bistro 1396."

**Response:** Carnival objects to Request No. 2 on the basis of the Work Product, Scope, Burden, Proportionality and Confidentiality Objections. Specifically, Carnival objects to Request No. 2 on the basis that it goes beyond what is relevant to the claims or defenses in this case, is not reasonably calculated to lead to relevant evidence concerning MSP's

trademark infringement or unfair competition claims, and is not proportional to the needs of the case. Agreements with unrelated third parties regarding unrelated trademarks have no bearing on whether (i) MSP holds a valid, protectable mark that has priority of use; and (ii) a likelihood of confusion exists between the parties' purported use of the phrase MIAMI SLICE, such that consumers encountering these marks would likely believe they emanate from the same source or are in some way affiliated. Request No. 2 constitutes an impermissible fishing expedition into documents not related to the alleged claims or defenses.

**Request No. 3:**

Financial documents demonstrating all monies or things paid, or other consideration provided, by Carnival for use of "Emeril" or "Emeril Lagasse" in connection with the agreements responsive to Request Nos. 1 or 2.

**Response:** Carnival objects to Request No. 3 on the basis of the Work Product, Scope, Burden, Proportionality and Confidentiality Objections. Specifically, Carnival objects to Request No. 3 on the basis that it goes beyond what is relevant to the claims or defenses in this case, is not reasonably calculated to lead to relevant evidence concerning MSP's trademark infringement or unfair competition claims, and is not proportional to the needs of the case. Agreements with unrelated third parties regarding unrelated trademarks have no bearing on whether (i) MSP holds a valid, protectable mark that has priority of use; and (ii) a likelihood of confusion exists between the parties' purported use of the phrase MIAMI SLICE, such that consumers encountering these marks would likely believe they emanate from the same source or are in some way affiliated. Request No. 3 constitutes an impermissible fishing expedition into documents not related to the alleged claims or defenses.

**Request No. 4:**

Copies of all agreements regarding Carnival's licensed use of "Shaq" or "Shaquille O'Neal" in connection with any goods or services provided aboard a Carnival ship, including but not limited to the restaurant "Big Chicken."

**Response:** Carnival objects to Request No. 4 on the basis of the Work Product, Scope, Burden, Proportionality and Confidentiality Objections. Specifically, Carnival objects to Request No. 4 on the basis that it goes beyond what is relevant to the claims or defenses in this case, is not reasonably calculated to lead to relevant evidence concerning MSP's trademark infringement or unfair competition claims, and is not proportional to the needs of the case. Agreements with unrelated third

parties regarding unrelated trademarks have no bearing on whether (i) MSP holds a valid, protectable mark that has priority of use; and (ii) a likelihood of confusion exists between the parties' purported use of the phrase MIAMI SLICE, such that consumers encountering these marks would likely believe they emanate from the same source or are in some way affiliated. Request No. 4 constitutes an impermissible fishing expedition into documents not related to the alleged claims or defenses.

**Request No. 5:**

Documents demonstrating all monies or things paid, or other consideration provided, by Carnival for use of "Shaq" or "Shaquille O'Neal" in connection with the agreements responsive to Request Nos. 3 or 4.

**Response:** Carnival objects to Request No. 5 on the basis of the Work Product, Scope, Burden, Proportionality and Confidentiality Objections. Specifically, Carnival objects to Request No. 5 on the basis that it goes beyond what is relevant to the claims or defenses in this case, is not reasonably calculated to lead to relevant evidence concerning MSP's trademark infringement or unfair competition claims, and is not proportional to the needs of the case. Agreements with unrelated third parties regarding unrelated trademarks have no bearing on whether (i) MSP holds a valid, protectable mark that has priority of use; and (ii) a likelihood of confusion exists between the parties' purported use of the phrase MIAMI SLICE, such that consumers encountering these marks would likely believe they emanate from the same source or are in some way affiliated. Request No. 5 constitutes an impermissible fishing expedition into documents not related to the alleged claims or defenses.

**Request No. 6:**

Copies of all agreements regarding Carnival's licensed use of "Rudi" or "Rudi Sodamin" in connection with any goods or services provided aboard a Carnival ship, including but not limited to the restaurant "Rudi's Seagrill."

**Response:** Carnival objects to Request No. 6 on the basis of the Work Product, Scope, Burden, Proportionality and Confidentiality Objections. Specifically, Carnival objects to Request No. 6 on the basis that it goes beyond what is relevant to the claims or defenses in this case, is not reasonably calculated to lead to relevant evidence concerning MSP's trademark infringement or unfair competition claims, and is not proportional to the needs of the case. Agreements with unrelated third parties regarding unrelated trademarks have no bearing on whether (i) MSP holds a valid, protectable mark that has priority of use; and (ii) a

likelihood of confusion exists between the parties' purported use of the phrase MIAMI SLICE, such that consumers encountering these marks would likely believe they emanate from the same source or are in some way affiliated. Request No. 6 constitutes an impermissible fishing expedition into documents not related to the alleged claims or defenses.

**Request No. 7:**

Copies of all agreements regarding Carnival's licensed use of "Rudi" or "Rudi Sodamin" in connection with any goods or services provided aboard the Carnival Celebration, including but not limited to the restaurant "Rudi's Seagrill."

**Response:** Carnival objects to Request No. 7 on the basis of the Work Product, Scope, Burden, Proportionality and Confidentiality Objections. Specifically, Carnival objects to Request No. 7 on the basis that it goes beyond what is relevant to the claims or defenses in this case, is not reasonably calculated to lead to relevant evidence concerning MSP's trademark infringement or unfair competition claims, and is not proportional to the needs of the case. Agreements with unrelated third parties regarding unrelated trademarks have no bearing on whether (i) MSP holds a valid, protectable mark that has priority of use; and (ii) a likelihood of confusion exists between the parties' purported use of the phrase MIAMI SLICE, such that consumers encountering these marks would likely believe they emanate from the same source or are in some way affiliated. Request No. 7 constitutes an impermissible fishing expedition into documents not related to the alleged claims or defenses.

**Request No. 8:**

Documents demonstrating all monies or things paid, or other consideration provided, by Carnival for use of "Rudi" or "Rudi Sodamin" in connection with the agreements responsive to Request Nos. 6 or 7.

**Response:** Carnival objects to Request No. 8 on the basis of the Work Product, Scope, Burden, Proportionality and Confidentiality Objections. Specifically, Carnival objects to Request No. 8 on the basis that it goes beyond what is relevant to the claims or defenses in this case, is not reasonably calculated to lead to relevant evidence concerning MSP's trademark infringement or unfair competition claims, and is not proportional to the needs of the case. Agreements with unrelated third parties regarding unrelated trademarks have no bearing on whether (i) MSP holds a valid, protectable mark that has priority of use; and (ii) a likelihood of confusion exists between the parties' purported use of the phrase MIAMI SLICE, such that consumers encountering these marks

would likely believe they emanate from the same source or are in some way affiliated. Request No. 8 constitutes an impermissible fishing expedition into documents not related to the alleged claims or defenses.

**Request No. 9:**

Copies of all agreements regarding Carnival's licensed use of "Guy" or "Guy Fieri" in connection with any goods or services provided aboard a Carnival ship, including but not limited to the restaurants "Guy's Pig & Anchor Smokehouse | Brewhouse," "Guy's Pig & Anchor Bar-B-Que Smokehouse," and "Guy's Burger Joint."

**Response:** Carnival objects to Request No. 9 on the basis of the Work Product, Scope, Burden, Proportionality and Confidentiality Objections. Specifically, Carnival objects to Request No. 9 on the basis that it goes beyond what is relevant to the claims or defenses in this case, is not reasonably calculated to lead to relevant evidence concerning MSP's trademark infringement or unfair competition claims, and is not proportional to the needs of the case. Agreements with unrelated third parties regarding unrelated trademarks have no bearing on whether (i) MSP holds a valid, protectable mark that has priority of use; and (ii) a likelihood of confusion exists between the parties' purported use of the phrase MIAMI SLICE, such that consumers encountering these marks would likely believe they emanate from the same source or are in some way affiliated. Request No. 9 constitutes an impermissible fishing expedition into documents not related to the alleged claims or defenses.

**Request No. 10:**

Copies of all agreements regarding Carnival's licensed use of "Guy" or "Guy Fieri" in connection with any goods or services provided aboard the Carnival Celebration, including but not limited to the restaurants "Guy's Pig & Anchor Smokehouse | Brewhouse" and "Guy's Burger Joint."

**Response:** Carnival objects to Request No. 10 on the basis of the Work Product, Scope, Burden, Proportionality and Confidentiality Objections. Specifically, Carnival objects to Request No. 10 on the basis that it goes beyond what is relevant to the claims or defenses in this case, is not reasonably calculated to lead to relevant evidence concerning MSP's trademark infringement or unfair competition claims, and is not proportional to the needs of the case. Agreements with unrelated third parties regarding unrelated trademarks have no bearing on whether (i) MSP holds a valid, protectable mark that has priority of use; and (ii) a likelihood of confusion exists between the parties' purported use of the phrase MIAMI SLICE, such that consumers encountering these marks

would likely believe they emanate from the same source or are in some way affiliated. Request No. 10 constitutes an impermissible fishing expedition into documents not related to the alleged claims or defenses.

**Request No. 11:**

Documents demonstrating all monies or things paid, or other consideration provided, by Carnival for use of "Guy" or "Guy Fieri" in connection with the agreements responsive to Request Nos. 9 or 10.

**Response:** Carnival objects to Request No. 11 on the basis of the Work Product, Scope, Burden, Proportionality and Confidentiality Objections. Specifically, Carnival objects to Request No. 11 on the basis that it goes beyond what is relevant to the claims or defenses in this case, is not reasonably calculated to lead to relevant evidence concerning MSP's trademark infringement or unfair competition claims, and is not proportional to the needs of the case. Agreements with unrelated third parties regarding unrelated trademarks have no bearing on whether (i) MSP holds a valid, protectable mark that has priority of use; and (ii) a likelihood of confusion exists between the parties' purported use of the phrase MIAMI SLICE, such that consumers encountering these marks would likely believe they emanate from the same source or are in some way affiliated. Request No. 11 constitutes an impermissible fishing expedition into documents not related to the alleged claims or defenses.

**Request No. 12:**

All communications from Carnival customer, or potential customer, "Aisling Kelly" including but not limited to all communications with the email address ahjc21@yahoo.com.

**Response:** Carnival objects to Request No. 12 on the basis of the Scope, Burden, Proportionality and Confidentiality Objections. Specifically, Carnival objects to Request No. 12 on the basis that it encompasses confidential communications with an unrelated third-party. Subject to and without waiving the General Objections, Carnival responds that there are no responsive documents in its custody, control, or possession.

**Request No. 13:**

All communications and documents referring to your answers to Plaintiff's Interrogatory Nos. 1- 4.

**Response:** Subject to and without waiving the General Objections, Carnival will produce non-privileged and non-confidential documents in response to Request No. 13.

DATED: August 10, 2023

Respectfully submitted,

s/Jaime Rich Vining
By: **David K. Friedland**
Florida Bar No. 833479
Email: dkf@friedlandvining.com
**Jaime Rich Vining**
Florida Bar No. 030932
Email: jrv@friedlandvining.com
**FRIEDLAND VINING, P.A.**
9100 S. Dadeland Blvd., Suite 1620
Miami, FL 33156
(305) 777-1721 – telephone
(305) 456-4922 – facsimile
***Counsel for Defendant/Counter-Plaintiff***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing **CARNIVAL'S OBJECTIONS AND RESPONSES TO MSP'S FIRST REQUEST TO PRODUCE** was served upon MSP by delivering true and correct electronic copies of same to its counsel on August 10, 2023 as follows:

**Richard Guerra**
**Javier Sobrado**
**Arthur Robert Weaver**
The Brickell IP Group, PLLC
1101 Brickell Avenue South Tower, Suite 800
Miami, FL 33131
Email: rguerra@brickellip.com
Email: JSobrado@BrickellIP.com
Email: rweaver@brickellip.com

/s/Jaime Rich Vining
Jaime Rich Vining