# Exhibit B

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF FLORIDA

**Case No. 1:23-cv-21347**

**MIAMI SLICE PIZZA, LLC**,

                Plaintiff/Counter-Defendant,

      v.

**CARNIVAL CORPORATION**,

                Defendant/Counter-Plaintiff.

## CARNIVAL'S OBJECTIONS AND RESPONSES TO MSP'S FIRST REQUEST TO PRODUCE

Defendant/Counter-Plaintiff Carnival Corporation ("Carnival"), by and through undersigned counsel, hereby responds to the First Request to Produce served by Plaintiff/Counter-Defendant Miami Slice Pizza, LLC's ("MSP") in accordance with the Federal Rules of Civil Procedure.

## GENERAL OBJECTIONS

1.　　Carnival objects to Definition No. 1 as including "agents, attorneys, or other representatives" to which Carnival is entitled to privilege or immunity under the Federal Rules of Civil Procedure or Federal Rules of Evidence.

2.　　Carnival objects to the First Request to Produce to the extent they call for information or documents that reflect or constitute, in full or in part, a privileged communication between attorney and client ("Privilege Objection").

3.　　Carnival objects to the First Request to Produce to the extent they call for information or documents which have been prepared or obtained either in anticipation of

litigation or for hearing or trial, or which constitute the mental impressions, conclusions, opinions, or legal theories of counsel for Carnival ("Work Product Objection").

4.      Carnival objects to the First Request to Produce to the extent they call for Carnival to take action other than (i) a reasonable and thorough search for information and documents responsive to the First Request to Produce maintained in the possession, custody or control of Carnival in locations where such information and documents are most likely to be found and (ii) a reasonable and thorough inquiry of those persons presently employed by Carnival most likely to have knowledge or information responsive to the First Request to Produce ("Harassment Objection").

5.      Carnival objects to the First Request to Produce to the extent they call for (i) information which is not within the applicable scope of discovery in this action or (ii) information which is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence; and Carnival further objects to the First Request to Produce to the extent that they call for information or documents that are not available to Carnival ("Scope Objection").

6.      Carnival objects to the First Request to Produce to the extent that the same are overly broad or overly inclusive and/or call for extensive research or investigation that would subject Carnival to annoyance, embarrassment, oppression, or undue burden or expense ("Burden Objection").

7.      Carnival objects to the First Request to Produce to the extent that they are not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether

the burden or expense of the proposed discovery outweighs its likely benefit ("Proportionality Objection").

8.      Carnival objects to the First Request to Produce to the extent that the same are vague, indefinite, uncertain, and/or ambiguous and, thus, cannot be reasonably answered ("Vagueness Objection").

9.      Carnival objects to the First Request to Produce to the extent that they seek proprietary or confidential business information ("Confidentiality Objection").  Carnival will provide such information only pursuant to an appropriate Protective Order entered by the Court in this action.

10.     Carnival objects to the First Request to Produce to the extent that they attempt to impose obligations upon Carnival that are inconsistent with or greater than the obligations imposed by the Federal Rules of Civil Procedure or any orders of the United States District Court for the Southern District of Florida.

11.     The foregoing General Objections are hereby incorporated by reference in each of the following responses of Carnival to the First Request to Produce, as if such General Objections were set forth verbatim in such responses.

12.     By answering the First Request to Produce, Carnival does not in any way waive or intend to waive, but instead intends to preserve, all objections as to the competency, relevancy, materiality, and admissibility of the answers or the subject matter thereof. Carnival reserves the right to supplement, amend, or correct all or part of the responses provided herein.

<u>**SPECIFIC OBJECTIONS AND RESPONSES TO**</u>
<u>**THE FIRST REQUEST TO PRODUCE**</u>

<u>**Request No. 1:**</u>

Copies of all agreements regarding Carnival's licensed use of "Emeril" or "Emeril Lagasse" in connection with any goods or services provided aboard a Carnival ship, including but not limited to the restaurants "Emeril's Bistro 1396," "Emeril's Bistro 1397," and "Emeril's Bistro 717."

**Response:**     Carnival objects to Request No. 1 on the basis of the Work Product, Scope, Burden, Proportionality and Confidentiality Objections. Specifically, Carnival objects to Request No. 1 on the basis that it goes beyond what is relevant to the claims or defenses in this case, is not reasonably calculated to lead to relevant evidence concerning MSP's trademark infringement or unfair competition claims, and is not proportional to the needs of the case. Agreements with unrelated third parties regarding unrelated trademarks have no bearing on whether (i) MSP holds a valid, protectable mark that has priority of use; and (ii) a likelihood of confusion exists between the parties' purported use of the phrase MIAMI SLICE, such that consumers encountering these marks would likely believe they emanate from the same source or are in some way affiliated. Request No. 1 constitutes an impermissible fishing expedition into documents not related to the alleged claims or defenses.

<u>**Request No. 2:**</u>

Copies of all agreements regarding Carnival's licensed use of "Emeril" or "Emeril Lagasse" in connection with any goods or services provided aboard the Carnival Celebration, including but not limited to the restaurant "Emeril's Bistro 1396."

**Response:**     Carnival objects to Request No. 2 on the basis of the Work Product, Scope, Burden, Proportionality and Confidentiality Objections. Specifically, Carnival objects to Request No. 2 on the basis that it goes beyond what is relevant to the claims or defenses in this case, is not reasonably calculated to lead to relevant evidence concerning MSP's

4

trademark infringement or unfair competition claims, and is not proportional to the needs of the case. Agreements with unrelated third parties regarding unrelated trademarks have no bearing on whether (i) MSP holds a valid, protectable mark that has priority of use; and (ii) a likelihood of confusion exists between the parties' purported use of the phrase MIAMI SLICE, such that consumers encountering these marks would likely believe they emanate from the same source or are in some way affiliated. Request No. 2 constitutes an impermissible fishing expedition into documents not related to the alleged claims or defenses.

### Request No. 3:

Financial documents demonstrating all monies or things paid, or other consideration provided, by Carnival for use of "Emeril" or "Emeril Lagasse" in connection with the agreements responsive to Request Nos. 1 or 2.

**Response:**     Carnival objects to Request No. 3 on the basis of the Work Product, Scope, Burden, Proportionality and Confidentiality Objections. Specifically, Carnival objects to Request No. 3 on the basis that it goes beyond what is relevant to the claims or defenses in this case, is not reasonably calculated to lead to relevant evidence concerning MSP's trademark infringement or unfair competition claims, and is not proportional to the needs of the case. Agreements with unrelated third parties regarding unrelated trademarks have no bearing on whether (i) MSP holds a valid, protectable mark that has priority of use; and (ii) a likelihood of confusion exists between the parties' purported use of the phrase MIAMI SLICE, such that consumers encountering these marks would likely believe they emanate from the same source or are in some way affiliated. Request No. 3 constitutes an impermissible fishing expedition into documents not related to the alleged claims or defenses.

### Request No. 4:

Copies of all agreements regarding Carnival's licensed use of "Shaq" or "Shaquille O'Neal" in connection with any goods or services provided aboard a Carnival ship, including but not limited to the restaurant "Big Chicken."

**Response:**     Carnival objects to Request No. 4 on the basis of the Work Product, Scope, Burden, Proportionality and Confidentiality Objections. Specifically, Carnival objects to Request No. 4 on the basis that it goes beyond what is relevant to the claims or defenses in this case, is not reasonably calculated to lead to relevant evidence concerning MSP's trademark infringement or unfair competition claims, and is not proportional to the needs of the case. Agreements with unrelated third

5

parties regarding unrelated trademarks have no bearing on whether (i) MSP holds a valid, protectable mark that has priority of use; and (ii) a likelihood of confusion exists between the parties' purported use of the phrase MIAMI SLICE, such that consumers encountering these marks would likely believe they emanate from the same source or are in some way affiliated. Request No. 4 constitutes an impermissible fishing expedition into documents not related to the alleged claims or defenses.

**Request No. 5:**

Documents demonstrating all monies or things paid, or other consideration provided, by Carnival for use of "Shaq" or "Shaquille O'Neal" in connection with the agreements responsive to Request Nos. 3 or 4.

**Response:**     Carnival objects to Request No. 5 on the basis of the Work Product, Scope, Burden, Proportionality and Confidentiality Objections. Specifically, Carnival objects to Request No. 5 on the basis that it goes beyond what is relevant to the claims or defenses in this case, is not reasonably calculated to lead to relevant evidence concerning MSP's trademark infringement or unfair competition claims, and is not proportional to the needs of the case. Agreements with unrelated third parties regarding unrelated trademarks have no bearing on whether (i) MSP holds a valid, protectable mark that has priority of use; and (ii) a likelihood of confusion exists between the parties' purported use of the phrase MIAMI SLICE, such that consumers encountering these marks would likely believe they emanate from the same source or are in some way affiliated. Request No. 5 constitutes an impermissible fishing expedition into documents not related to the alleged claims or defenses.

**Request No. 6:**

Copies of all agreements regarding Carnival's licensed use of "Rudi" or "Rudi Sodamin" in connection with any goods or services provided aboard a Carnival ship, including but not limited to the restaurant "Rudi's Seagrill."

**Response:**     Carnival objects to Request No. 6 on the basis of the Work Product, Scope, Burden, Proportionality and Confidentiality Objections. Specifically, Carnival objects to Request No. 6 on the basis that it goes beyond what is relevant to the claims or defenses in this case, is not reasonably calculated to lead to relevant evidence concerning MSP's trademark infringement or unfair competition claims, and is not proportional to the needs of the case. Agreements with unrelated third parties regarding unrelated trademarks have no bearing on whether (i) MSP holds a valid, protectable mark that has priority of use; and (ii) a

likelihood of confusion exists between the parties' purported use of the phrase MIAMI SLICE, such that consumers encountering these marks would likely believe they emanate from the same source or are in some way affiliated. Request No. 6 constitutes an impermissible fishing expedition into documents not related to the alleged claims or defenses.

**Request No. 7:**

Copies of all agreements regarding Carnival's licensed use of "Rudi" or "Rudi Sodamin" in connection with any goods or services provided aboard the Carnival Celebration, including but not limited to the restaurant "Rudi's Seagrill."

**Response:**    Carnival objects to Request No. 7 on the basis of the Work Product, Scope, Burden, Proportionality and Confidentiality Objections. Specifically, Carnival objects to Request No. 7 on the basis that it goes beyond what is relevant to the claims or defenses in this case, is not reasonably calculated to lead to relevant evidence concerning MSP's trademark infringement or unfair competition claims, and is not proportional to the needs of the case. Agreements with unrelated third parties regarding unrelated trademarks have no bearing on whether (i) MSP holds a valid, protectable mark that has priority of use; and (ii) a likelihood of confusion exists between the parties' purported use of the phrase MIAMI SLICE, such that consumers encountering these marks would likely believe they emanate from the same source or are in some way affiliated. Request No. 7 constitutes an impermissible fishing expedition into documents not related to the alleged claims or defenses.

**Request No. 8:**

Documents demonstrating all monies or things paid, or other consideration provided, by Carnival for use of "Rudi" or "Rudi Sodamin" in connection with the agreements responsive to Request Nos. 6 or 7.

**Response:**    Carnival objects to Request No. 8 on the basis of the Work Product, Scope, Burden, Proportionality and Confidentiality Objections. Specifically, Carnival objects to Request No. 8 on the basis that it goes beyond what is relevant to the claims or defenses in this case, is not reasonably calculated to lead to relevant evidence concerning MSP's trademark infringement or unfair competition claims, and is not proportional to the needs of the case. Agreements with unrelated third parties regarding unrelated trademarks have no bearing on whether (i) MSP holds a valid, protectable mark that has priority of use; and (ii) a likelihood of confusion exists between the parties' purported use of the phrase MIAMI SLICE, such that consumers encountering these marks

7

would likely believe they emanate from the same source or are in some way affiliated. Request No. 8 constitutes an impermissible fishing expedition into documents not related to the alleged claims or defenses.

**Request No. 9:**

Copies of all agreements regarding Carnival's licensed use of "Guy" or "Guy Fieri" in connection with any goods or services provided aboard a Carnival ship, including but not limited to the restaurants "Guy's Pig & Anchor Smokehouse | Brewhouse," "Guy's Pig & Anchor Bar-B-Que Smokehouse," and "Guy's Burger Joint."

**Response:**    Carnival objects to Request No. 9 on the basis of the Work Product, Scope, Burden, Proportionality and Confidentiality Objections. Specifically, Carnival objects to Request No. 9 on the basis that it goes beyond what is relevant to the claims or defenses in this case, is not reasonably calculated to lead to relevant evidence concerning MSP's trademark infringement or unfair competition claims, and is not proportional to the needs of the case. Agreements with unrelated third parties regarding unrelated trademarks have no bearing on whether (i) MSP holds a valid, protectable mark that has priority of use; and (ii) a likelihood of confusion exists between the parties' purported use of the phrase MIAMI SLICE, such that consumers encountering these marks would likely believe they emanate from the same source or are in some way affiliated. Request No. 9 constitutes an impermissible fishing expedition into documents not related to the alleged claims or defenses.

**Request No. 10:**

Copies of all agreements regarding Carnival's licensed use of "Guy" or "Guy Fieri" in connection with any goods or services provided aboard the Carnival Celebration, including but not limited to the restaurants "Guy's Pig & Anchor Smokehouse | Brewhouse" and "Guy's Burger Joint."

**Response:**    Carnival objects to Request No. 10 on the basis of the Work Product, Scope, Burden, Proportionality and Confidentiality Objections. Specifically, Carnival objects to Request No. 10 on the basis that it goes beyond what is relevant to the claims or defenses in this case, is not reasonably calculated to lead to relevant evidence concerning MSP's trademark infringement or unfair competition claims, and is not proportional to the needs of the case. Agreements with unrelated third parties regarding unrelated trademarks have no bearing on whether (i) MSP holds a valid, protectable mark that has priority of use; and (ii) a likelihood of confusion exists between the parties' purported use of the phrase MIAMI SLICE, such that consumers encountering these marks

8

would likely believe they emanate from the same source or are in some way affiliated. Request No. 10 constitutes an impermissible fishing expedition into documents not related to the alleged claims or defenses.

**Request No. 11:**

Documents demonstrating all monies or things paid, or other consideration provided, by Carnival for use of "Guy" or "Guy Fieri" in connection with the agreements responsive to Request Nos. 9 or 10.

**Response:**      Carnival objects to Request No. 11 on the basis of the Work Product, Scope, Burden, Proportionality and Confidentiality Objections. Specifically, Carnival objects to Request No. 11 on the basis that it goes beyond what is relevant to the claims or defenses in this case, is not reasonably calculated to lead to relevant evidence concerning MSP's trademark infringement or unfair competition claims, and is not proportional to the needs of the case. Agreements with unrelated third parties regarding unrelated trademarks have no bearing on whether (i) MSP holds a valid, protectable mark that has priority of use; and (ii) a likelihood of confusion exists between the parties' purported use of the phrase MIAMI SLICE, such that consumers encountering these marks would likely believe they emanate from the same source or are in some way affiliated. Request No. 11 constitutes an impermissible fishing expedition into documents not related to the alleged claims or defenses.

**Request No. 12:**

All communications from Carnival customer, or potential customer, "Aisling Kelly" including but not limited to all communications with the email address ahjc21@yahoo.com.

**Response:**      Carnival objects to Request No. 12 on the basis of the Scope, Burden, Proportionality and Confidentiality Objections. Specifically, Carnival objects to Request No. 12 on the basis that it encompasses confidential communications with an unrelated third-party. Subject to and without waiving the General Objections, Carnival responds that there are no responsive documents in its custody, control, or possession.

**Request No. 13:**

All communications and documents referring to your answers to Plaintiff's Interrogatory Nos. 1- 4.

**Response:**      Subject to and without waiving the General Objections, Carnival will produce non-privileged and non-confidential documents in response to Request No. 13.

DATED:  August 10, 2023                    Respectfully submitted,

                                      s/Jaime Rich Vining

                                      By:  **David K. Friedland**
                                      Florida Bar No. 833479
                                      Email:  dkf@friedlandvining.com
                                      **Jaime Rich Vining**
                                      Florida Bar No. 030932
                                      Email:  jrv@friedlandvining.com
                                      **FRIEDLAND VINING, P.A.**
                                      9100 S. Dadeland Blvd., Suite 1620
                                      Miami, FL 33156
                                      (305) 777-1721 – telephone
                                      (305) 456-4922 – facsimile
                                      ***Counsel for Defendant/Counter-Plaintiff***

## CERTIFICATE OF SERVICE

      **I HEREBY CERTIFY** that the foregoing **CARNIVAL'S OBJECTIONS AND RESPONSES TO MSP'S FIRST REQUEST TO PRODUCE** was served upon MSP by delivering true and correct electronic copies of same to its counsel on August 10, 2023 as follows:

**Richard Guerra**
**Javier Sobrado**
**Arthur Robert Weaver**
The Brickell IP Group, PLLC
1101 Brickell Avenue South Tower, Suite 800
Miami, FL 33131
Email: rguerra@brickellip.com
Email: JSobrado@BrickellIP.com
Email: rweaver@brickellip.com

                                      /s/Jaime Rich Vining
                                         Jaime Rich Vining

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:23-cv-21347

**MIAMI SLICE PIZZA, LLC**,

Plaintiff/Counter-Defendant,

v.

**CARNIVAL CORPORATION**,

Defendant/Counter-Plaintiff.

### CARNIVAL'S OBJECTIONS AND RESPONSES TO MSP'S SECOND SET OF REQUESTS FOR PRODUCTION, ESI, AND TANGIBLE THINGS

Defendant/Counter-Plaintiff Carnival Corporation ("Carnival"), by and through undersigned counsel, hereby responds to the Second Set of Requests for Production, ESI, and Tangible Things ("Second Request to Produce") served by Plaintiff/Counter-Defendant Miami Slice Pizza, LLC's ("MSP") in accordance with the Federal Rules of Civil Procedure.

### GENERAL OBJECTIONS

1.      Carnival objects to Definition No. 1 as including "agents, attorneys, or other representatives" to which Carnival is entitled to privilege or immunity under the Federal Rules of Civil Procedure or Federal Rules of Evidence.

2.      Carnival objects to the Second Request to Produce to the extent they call for information or documents that reflect or constitute, in full or in part, a privileged communication between attorney and client ("Privilege Objection").

3.      Carnival objects to the Second Request to Produce to the extent they call for information or documents which have been prepared or obtained either in anticipation of

litigation or for hearing or trial, or which constitute the mental impressions, conclusions, opinions, or legal theories of counsel for Carnival ("Work Product Objection").

4.      Carnival objects to the Second Request to Produce to the extent they call for Carnival to take action other than (i) a reasonable and thorough search for information and documents responsive to the Second Request to Produce maintained in the possession, custody or control of Carnival in locations where such information and documents are most likely to be found and (ii) a reasonable and thorough inquiry of those persons presently employed by Carnival most likely to have knowledge or information responsive to the Second Request to Produce ("Harassment Objection").

5.      Carnival objects to the Second Request to Produce to the extent they call for (i) information which is not within the applicable scope of discovery in this action or (ii) information which is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence; and Carnival further objects to the Second Request to Produce to the extent that they call for information or documents that are not available to Carnival ("Scope Objection").

6.      Carnival objects to the Second Request to Produce to the extent that the same are overly broad or overly inclusive and/or call for extensive research or investigation that would subject Carnival to annoyance, embarrassment, oppression, or undue burden or expense ("Burden Objection").

7.      Carnival objects to the Second Request to Produce to the extent that they are not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether

the burden or expense of the proposed discovery outweighs its likely benefit ("Proportionality Objection").

8.      Carnival objects to the Second Request to Produce to the extent that the same are vague, indefinite, uncertain, and/or ambiguous and, thus, cannot be reasonably answered ("Vagueness Objection").

9.      Carnival objects to the Second Request to Produce to the extent that they attempt to impose obligations upon Carnival that are inconsistent with or greater than the obligations imposed by the Federal Rules of Civil Procedure or any orders of the United States District Court for the Southern District of Florida.

10.     The foregoing General Objections are hereby incorporated by reference in each of the following responses of Carnival to the Second Request to Produce, as if such General Objections were set forth verbatim in such responses.

11.     By answering the Second Request to Produce, Carnival does not in any way waive or intend to waive, but instead intends to preserve, all objections as to the competency, relevancy, materiality, and admissibility of the answers or the subject matter thereof. Carnival reserves the right to supplement, amend, or correct all or part of the responses provided herein.

## SPECIFIC OBJECTIONS AND RESPONSES TO THE SECOND REQUEST TO PRODUCE

**Request No. 14:**

All electronic communications to, from, copying, or otherwise including Glenn Aprile that includes any of the following Boolean search terms in the communication:

- "Miami Slice"
- Miami and Slice
- Miami /3 Slice
- Miami and Style and Pizza

**Request No. 38:**

Documents reflecting gross sales, gross profits, revenues, and related financial information related or derived from the Carnival Restaurant, which are advertised, promoted, marketed, offered for sale, sold, or otherwise provided by Carnival for which Carnival made any use of "Miami Slice," including, without limitation, the revenue generated by such sale.

**Response:**     Subject to and without waiving the General Objections, Carnival responds that there are no responsive documents in its custody, control, or possession.

**Request No. 39:**

Documents reflecting gross sales, gross profits, revenues, and related financial information resulting from the passenger fare tickets for the Carnival Celebration, including, without limitation, the revenue generated by the sale of passenger fare tickets for cruises on the Carnival Celebration.

**Response:**     In addition to its General Objections, Carnival objects to this Request for Production as vague and overbroad. The phrase "related financial information resulting from the passenger fare tickets" is not defined. Carnival further objects to this request to the extent it is irrelevant to any party's claim or defense and is unimportant in resolving the issues of this action.

**Request No. 40:**

All tax returns filed with the Internal Revenue Service or any other taxing authority by or on behalf of Carnival since Carnival first began any use of "Miami Slice."

**Response:**     In addition to its General Objections, Carnival objects to this Request for Production as vague, confusing, and ambiguous, overbroad, unduly burdensome without a reasonable limitation in scope, and as not proportional to the needs of this action.

**Request No. 41:**

All tax returns filed with the Internal Revenue Service or any other taxing authority by or on behalf of Carnival since Carnival first began selling cruises for the Carnival Celebration.

**Response:**     In addition to its General Objections, Carnival objects to this Request for Production as vague, confusing, and ambiguous, overbroad, unduly burdensome without a reasonable limitation in scope, and as not proportional to the needs of this action.

DATED:  October 4, 2023                    Respectfully submitted,

                                           s/Jaime Rich Vining
                                           By:  **David K. Friedland**
                                           Florida Bar No. 833479
                                           Email:  dkf@friedlandvining.com
                                           **Jaime Rich Vining**
                                           Florida Bar No. 030932
                                           Email:  jrv@friedlandvining.com
                                           **FRIEDLAND VINING, P.A.**
                                           9100 S. Dadeland Blvd., Suite 1620
                                           Miami, FL 33156
                                           (305) 777-1721 – telephone
                                           (305) 456-4922 – facsimile
                                           ***Counsel for Defendant/Counter-Plaintiff***

## CERTIFICATE OF SERVICE

   **I HEREBY CERTIFY** that the foregoing **CARNIVAL'S OBJECTIONS AND RESPONSES TO MSP'S SECOND SET OF REQUESTS FOR PRODUCTION, ESI, AND TANGIBLE THINGS** was served upon MSP by delivering true and correct electronic copies of same to its counsel on October 4, 2023 as follows:

**Richard Guerra**
**Javier Sobrado**
**Arthur Robert Weaver**
The Brickell IP Group, PLLC
1101 Brickell Avenue South Tower, Suite 800
Miami, FL 33131
Email: rguerra@brickellip.com
Email: JSobrado@BrickellIP.com
Email: rweaver@brickellip.com

                                           /s/Jaime Rich Vining
                                                Jaime Rich Vining

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:23-cv-21347**

---

**MIAMI SLICE PIZZA, LLC**,

               Plaintiff/Counter-Defendant,

      v.

**CARNIVAL CORPORATION**,

               Defendant/Counter-Plaintiff.

---

## CARNIVAL'S OBJECTIONS AND RESPONSES TO MSP'S FIRST SET OF REQUESTS FOR ADMISSION

Defendant/Counter-Plaintiff Carnival Corporation ("Carnival"), by and through undersigned counsel, hereby responds to the First Set of Requests for Admission ("First Request for Admissions") served by Plaintiff/Counter-Defendant Miami Slice Pizza, LLC's ("MSP") in accordance with the Federal Rules of Civil Procedure.

## GENERAL OBJECTIONS

1.     Carnival objects to Definition No. 1 as including "agents, attorneys, or other representatives" to which Carnival is entitled to privilege or immunity under the Federal Rules of Civil Procedure or Federal Rules of Evidence.

2.     Carnival objects to the First Request for Admissions to the extent they call for information or documents that reflect or constitute, in full or in part, a privileged communication between attorney and client ("Privilege Objection").

3.     Carnival objects to the First Request for Admissions to the extent they call for information or documents which have been prepared or obtained either in anticipation

of litigation or for hearing or trial, or which constitute the mental impressions, conclusions, opinions, or legal theories of counsel for Carnival ("Work Product Objection").

4.      Carnival objects to the First Request for Admissions to the extent they call for Carnival to take action other than (i) a reasonable and thorough search for information and documents responsive to the First Request for Admissions maintained in the possession, custody or control of Carnival in locations where such information and documents are most likely to be found and (ii) a reasonable and thorough inquiry of those persons presently employed by Carnival most likely to have knowledge or information responsive to the First Request for Admissions ("Harassment Objection").

5.      Carnival objects to the First Request for Admissions to the extent they call for (i) information which is not within the applicable scope of discovery in this action or (ii) information which is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence; and Carnival further objects to the First Request for Admissions to the extent that they call for information or documents that are not available to Carnival ("Scope Objection").

6.      Carnival objects to the First Request for Admissions to the extent that the same are overly broad or overly inclusive and/or call for extensive research or investigation that would subject Carnival to annoyance, embarrassment, oppression, or undue burden or expense ("Burden Objection").

7.      Carnival objects to the First Request for Admissions to the extent that they are not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues,

2

and whether the burden or expense of the proposed discovery outweighs its likely benefit ("Proportionality Objection").

8.      Carnival objects to the First Request for Admissions to the extent that the same are vague, indefinite, uncertain, and/or ambiguous and, thus, cannot be reasonably answered ("Vagueness Objection").

9.      Carnival objects to the First Request for Admissions to the extent that they attempt to impose obligations upon Carnival that are inconsistent with or greater than the obligations imposed by the Federal Rules of Civil Procedure or any orders of the United States District Court for the Southern District of Florida.

10.     The foregoing General Objections are hereby incorporated by reference in each of the following responses of Carnival to the First Request for Admissions, as if such General Objections were set forth verbatim in such responses.

11.     By answering the First Request for Admissions, Carnival does not in any way waive or intend to waive, but instead intends to preserve, all objections as to the competency, relevancy, materiality, and admissibility of the answers or the subject matter thereof. Carnival reserves the right to supplement, amend, or correct all or part of the responses provided herein.

## SPECIFIC OBJECTIONS AND RESPONSES TO THE FIRST REQUEST FOR ADMISSIONS

### Request No. 1:

Admit that Miami Slice does not sell or offer for sale any "Miami-Style Pizza" as that phrase is defined in your response to Plaintiff's Interrogatory No. 1.

**Request No. 25:**

Admit that the goods and/or services offered at the Carnival Restaurant overlap with the "restaurant services" offered by Miami Slice.

  **Response**: Subject to and without waiving the General Objections, Carnival

denies this Request for Admission.

**Request No. 26:**

Admit that the pizza offered at the Carnival Restaurant is included in the passenger fare for customers purchasing cruises on board Carnival Celebration.

  **Response**: Subject to and without waiving the General Objections, Carnival

admits this Request for Admission.

**Request No. 27:**

Admit that Carnival earns a profit on the passenger fare for customers purchasing cruises on board Carnival Celebration.

  **Response**: Carnival specifically objects to this Request for Admission on the

basis that the request is vague and ambiguous as to the phrase "customers purchasing

cruises on board Carnival Celebration." Carnival interprets this Request as directed to

guests sailing onboard Carnival's ship, and, with that understanding, and subject to and

without waiving the General Objections, Carnival admits this Request for Admission.

**Request No. 28:**

Admit that the use of the trademark GUY'S BURGER JOINT is governed by a written agreement with Knuckle Sandwich, LLC.

  **Response**: Carnival specifically objects to this Request for Admission on the

basis that the request is vague and ambiguous as to the phrase "governed by a written

agreement." Carnival interprets this Request as directed to the existence of a written

agreement between Carnival and Knuckle Sandwich, LLC,  and, with that understanding,

10

and subject to and without waiving the General Objections, Carnival admits this Request

for Admission.

**Request No. 29:**

Admit that Knuckle Sandwich, LLC receives monetary compensation from Carnival in
consideration for the use of the trademark GUY'S BURGER JOINT.

**Response**: Carnival specifically objects to this Request for Admission on the

basis that the request is vague and ambiguous as to the phrase "monetary compensation."

Carnival interprets this Request as directed to the existence of a trademark licensing fee

paid to Knuckle Sandwich, LLC,  and, with that understanding, and subject to and

without waiving the General Objections, Carnival denies this Request for Admission.

**Request No. 30:**

Admit that the use of the trademark BIG CHICKEN is governed by a written agreement
with BCIP LLC.

**Response**: Carnival specifically objects to this Request for Admission on the

basis that the request is vague and ambiguous as to the phrase "governed by a written

agreement." Carnival interprets this Request as directed to the existence of a written

agreement between Carnival and BCIP LLC, LLC,  and, with that understanding, and

subject to and without waiving the General Objections, Carnival denies this Request for

Admission.

**Request No. 31:**

Admit that BCIP LLC receives monetary compensation from Carnival in consideration
for the use of the trademark BIG CHICKEN.

**Response**: Carnival specifically objects to this Request for Admission on the

basis that the request is vague and ambiguous as to the phrase "monetary compensation."

Carnival interprets this Request as directed to the existence of a trademark licensing fee

paid to BCIP LLC,  and, with that understanding, and subject to and without waiving the

General Objections, Carnival denies this Request for Admission.

**Request No. 32:**

Admit that you are not relying on any opinion of counsel in support of any of your claims
or defenses.

**Response**: Subject to and without waiving the General Objections, Carnival

responds that, at this time, it lacks sufficient information to admit or deny this Request

for Admission and on that basis denies this request.

DATED:  October 4, 2023                     Respectfully submitted,

                                            s/Jaime Rich Vining
                                            By:  **David K. Friedland**
                                            Florida Bar No. 833479
                                            Email:  dkf@friedlandvining.com
                                            **Jaime Rich Vining**
                                            Florida Bar No. 030932
                                            Email:  jrv@friedlandvining.com
                                            **FRIEDLAND VINING, P.A.**
                                            9100 S. Dadeland Blvd., Suite 1620
                                            Miami, FL 33156
                                            (305) 777-1721 – telephone
                                            (305) 456-4922 – facsimile
                                            ***Counsel for Defendant/Counter-Plaintiff***

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:23-cv-21347-JEM

MIAMI SLICE PIZZA, LLC, a Florida
limited liability company,

       Plaintiff/Counter-Defendant,

v.

CARNIVAL CORPORATION, a Florida
corporation

       Defendant/Counter-Plaintiff.

_____/

**<u>DECLARATION OF STEPHEN HOLZEN</u>**

    I, Stephen Holzen, declare and state as follows:

    1.     I am over eighteen (18) years of age and I have personal knowledge of the facts set forth herein.

    2.     I am a Managing Director in the Disputes, Claims & Investigations practice for Stout Risius Ross, LLC. I have been retained by Plaintiff Miami Slice Pizza, LLC as a financial and damages expert in this matter. A copy of my CV is attached to this declaration.

    3.     I have reviewed the Stipulated Protective Order [D.E. 18], I agree to be bound by its terms, and I have executed a copy of Exhibit A to that Order.

    4.     I have reviewed Plaintiff's Request for Production Nos. 1-11 and 39, and believe these documents will be relevant to forming my conclusions.

    5.     With respect to Request Nos. 1-11, these documents are directed to the licensing terms and compensation for Defendant Carnival Corporation's use of third-party marks on their

1

cruise ship restaurants, particularly those on board the at-issue Carnival Celebration. These documents will be useful, possibly critical, information in assessing Plaintiff's damages. I anticipate that these documents will set a historical record for what Carnival has previously compensated third parties for the use of third-party brands and trademarks in connection with restaurants on board Carnival ships. Request Nos. 4-5 and 9-11 are particularly relevant because they concern Carnival restaurants like "Guy's Burger Joint" and "Shaq's Big Chicken," which are restaurants on board the Carnival Celebration that are included in the passenger fare (like the at-issue Miami Slice restaurant), and those third-party brand owners *also* operate traditional, land-based restaurants (like the Plaintiff, Miami Slice). Comparing Carnival's compensation to these brand owners with revenue of those brands' land-based restaurants will be useful, possibly critical, information for me as I formulate my damages opinions.

6.     With respect to Request No. 39, it is my understanding that food served at the at-issue Miami Slice restaurant onboard the Carnival Celebration is included in the passenger fare. It is also my understanding that Carnival claims a profit to this passenger fare. Accordingly, I intend to formulate an opinion as to what percentage of the passenger fare profit is attributable to the at-issue Miami Slice restaurant and subject to disgorgement pursuant to 15 U.S.C. § 1117(a). However, in order to formulate an opinion, I need financial documents responsive to this request.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 11th day of December, 2023 at Washington, D.C.

_Stephen Holzen_
Stephen Holzen

# Stephen Holzen
## Managing Director



**Washington, DC USA**
**Office:** +1.202.370.2403
**Mobile:** +1.202.557.9416
sholzen@stout.com

### Education

M.B.A., Finance,
American University
B.S., Mechanical Engineering,
Penn State University

### Designations

Certified Valuation Analyst (CVA)
Certified Licensing Professional (CLP)
Registered Patent Agent, #56,008

### Practice Areas

Intellectual Property Disputes
Intellectual Property Valuation
Complex Business Litigation
Trade Secrets & Restrictive Covenants

Steve Holzen is an expert witness and a consultant on a range of financial and economic issues. He provides liability and damages analyses in complex commercial disputes including patent, trademark, copyright, trade secret, and breach of contract litigations and in international trade investigations. He also consults on non-litigation projects involving healthcare compliance, transactions, and strategic business decisions. Corporations and attorneys benefit from his well-rounded and comprehensive understanding of intellectual property issues including strategic assessments, risk analyses, economic damages, due diligence, early and pre-case assessments, fair market value assessments for healthcare compliance purposes, and other complex topics.

He has testified as an expert witness and served as an expert consultant in federal and state courts, at the U.S. International Trade Commission (ITC), in the Federal Court of Claims (CFC), at the Financial Industry Regulatory Authority (FINRA), and before the U.S. Patent Trial and Appeal Board (PTAB). He has provided opinions in various forums on issues including lost profits, reasonable royalties, unjust enrichment, corrective advertising, domestic industry, public interest factors, preliminary injunctions, permanent injunctions, exclusion remedies, and commercial success.

In addition, Mr. Holzen has lectured about intellectual property damages and valuation issues on several occasions and has published articles about intellectual property damages, licensing and valuation issues. He co-authored a book titled "Winning the Patent Damages Case" which serves as a guide for patent litigators and in-house counsel involved in patent infringement matters. Prior to his consulting career, Mr. Holzen served as a Patent Examiner with the U.S. Patent and Trademark Office. As a patent examiner, Mr. Holzen assessed the novelty and obviousness of technology from the following industries: Aeronautics, Astronautics, Mechanical Guns and Projectors, Animal Husbandry, Firearms, Ammunition and Explosive-Charge Making, Ordnances, and Ammunition and Explosives. He is a registered Patent Agent and is an active member of the American Intellectual Property Law Association.

### Professional Memberships

- American Intellectual Property Law Association: Chair of the DC Chapter of the Local Networking Subcommittee of the New Lawyers Committee, Chair of the Patent Agent Committee from 2014-2016, Chair and Vice Chair of the Patent Damages Subcommittee of the Patent Litigation Committee from 2016-2018.

- Licensing Executive Society: Washington DC Chapter Vice Chair from 2018-2020; Member of the LES Board of Directors as of 2023.

- National Association of Certified Valuator and Analysts.

### Recognitions

- Mr. Holzen has been nationally recognized as a top economic expert witness by the IAM Patent 1000 from 2019-2023.

**Stephen Holzen**
Managing Director



**Publications**

"The Economics of Patent Law Applied to Pre-Litigation Assessments" The Stout Journal, Fall/Winter 2018

"Patent Damages 2017: A Year in Review," AIPLA.org, February 1, 2018

"The Use and Misuse of Forward Citation in Patent Infringement Damages" The Stout Journal, Fall/Winter 2017

"Artificial Intelligence: Does it Work for Patent Valuation?" The Stout Journal, Spring/Summer 2017

"2016 Year in Review – U.S. Patent Damages Cases of Significance," AIPLA.org, February 1, 2017
Holzen, Stephen & Cauley, Richard (2016). Winning The Patent Damages Case: A Litigator's Guide To Economic Models And Other Damage Strategies. New York: LexisNexis.

Holzen, Stephen & Cauley, Richard (2018). Winning The Patent Damages Case: A Litigator's Guide To Economic Models And Other Damage Strategies. New York: LexisNexis.

"Akamai Technologies, Inc. v. Limelight Networks, Inc. Federal Circuit Weighs in on Lost Profits Opinion Involving Head-to-Head Competitors," The Stout Journal, Spring 2016 [Republished by American Bar Association as "Lost Profits Involving Head-to-Head Competitors," (Spring 2016)]

"An Insider's Perspective—Patents and the Patent System: An Interview with Former Commissioner Robert Stoll," The Stout Journal, Fall 2014

"Does a Small Claims Court for Patent Infringement Make Economic Sense?" Litigation Perspectives, Winter 2013

"The Impact of Non-Infringing Alternatives on Patent Damages," Litigation Perspectives, Summer 2013

**Speeches and Seminars**

"Developments Impacting Reasonable Royalty Damages," Certified Patent Valuation Analysts, January 2023

"Recent Court Decisions Affecting Patent Damages," CLE presentation to Sheppard Mullin, June 30, 2020

**Stephen Holzen**
Managing Director



"Not your Mother's Trade Secrets" CLE presentation to General Electric, February 27, 2020

"Keep Your Eye on the Remedy Ball," AIPLA 2018 Spring Meeting, Panelist and Presenter, Seattle Washington, May 15, 2018

"Dress for Success," AIPLA's Career & Practice Management Discussions Series, December 14, 2017
"Settlement Agreements as Comparables: New Comprehensive Analysis from the Federal Circuit," IP Chat Channel, IPO, April 20, 2017.

"Claim Draftsmanship and the Entire Market Value Rule," 2017 IP Damages Symposium, Licensing Executives Society, Washington D.C., February 23, 2017

"Numbers Are Your Friends: Exploring the Intersection of IP Valuation and Damages," 2016 Intellectual Property Boot Camp, Washington, D.C., November 9, 2016

"IP Valuation," Jones Day, Washington, D.C., November 8, 2016

"Patent Valuations and the Impact of Claim Drafting," Pauline Newman IP American Inn of Court, Alexandria, VA, October 19, 2016

"Reasonable Royalty in Patent Damages: What you Need to Know in 2016," The Knowledge Group LIVE Webcast, Friday, July 29, 2016

"The Role of IP Valuation in M&A Due Diligence", IP Due Diligence in Corporate Transactions, Kramer Levin Naftalis & Frankel LLP, New York City, NY, November 11, 2015

"Technology Licensing and Valuation," Instituto De Capacitacion E Investigacion Del Plastico Y Del Caucho (ICIPC), Medellin, Antioquia, Colombia, October 19, 2015

"Fundamental and Technical IP Assessments," Instituto De Capacitacion E Investigacion Del Plastic Y Del Caucho (ICIPC), Medellin, Antioquia, Colombia, October 19-20, 2015

"IP Valuations: From the Boardroom to the Courtroom", Morgan Lewis, Washington DC, May 8, 2015

"Connected Cars: A Platform For Information", New York Auto Show Symposium, New York City, NY, April 1, 2015

"The IP Marketplace," American Intellectual Property Law Association, Mid-Winter Institute, Orlando, FL, January 28, 2015

"Say What? Improving Written & Oral Communication Skills For Success," American Intellectual Property Law Association, Webinar, January 20, 2015

**Stephen Holzen**
Managing Director



"Strategies for Monetizing and Maximizing the Value of Your Global IP Portfolio," World Services Group ("WSG"), Patent Law Workshop, Ulmer & Berne LLP, Cleveland, Ohio. October 15, 2014

"Valuing Intellectual Property: What's in the Toolbox?" Maryland State Bar Association, Intellectual Property Section, April 2013
"LES Valuation and Damages Course," LES Chapter Meeting, Washington, DC, December 2011

"LES Valuation and Damages Course," LES Chapter Meeting, Reston, VA, June 2011

"Business and Intellectual Property Valuation," National Institutes of Health, Foundation For Advanced Education In The Sciences, May 2011

"Lessons Learned: A Review Of i4i Ltd. v. Microsoft Corp.," Maryland State Bar Association, June 2010

"Valuation of Intellectual Property," Beta Gamma Sigma, George Washington University, October 2009

"The Developing Intellectual Property Marketplace," Aerospace Industries Association, Intellectual Property Committee Meeting, April 2009

"Next Steps Workshop," NASA Goddard SBIR\STTR Conference, March 2009

"Auctioning Federal IP Licensing Rights," Licensing Executives Society, Hogan Lovells, February 2009

**Disclosures, Declarations, Reports, and Testimony (2010 to Present)**

Expert Report in re: Nano-Second Technology Co., Ltd v**. Dynaflex International and GForce Corporation d/b/a DFX Sport and Fitness**, U.S. District Court for the Central District of California. Subject matter: Patent infringement (Report issued in 2013).

Expert Report in re: **Tele-Consultants, Inc.** v. LinQuest Corp., BTP Systems, LLC, Michael Girard and Patrick Kidwell, Virginia Circuit Court for the County of Fairfax. Subject matter: Breach of duty of loyalty, misappropriation of trade secrets, tortious interference with contracts, tortious interference with business relationships, defamation, violation of the Virginia Computer Crimes Act, unjust enrichment, and statutory and common law conspiracy (Report issued in 2015).

Expert Report and Deposition in re: **Edward L. Blenderman** v. LifeWave, Inc., U.S. District Court for the Southern District of Florida. Subject matter: Patent infringement (Deposition and Report issued in 2017).

**Stephen Holzen**
Managing Director



Expert Report and Deposition in re: M-Edge International Corporation v. **LifeWorks Technology Group LLC, U.S.** District Court for the District of Maryland. Subject matter: Patent infringement (Deposition and Report issued in 2017).

Expert Reports in re: **Nanticoke Lenni-Lenape Tribal Nation** v. Christopher S. Porrino, Attorney General of New Jersey, Superior Court of New Jersey Law Division, Mercer Country. Subject Matter: Civil Rights (Reports issued in 2018).

Expert Report in re: Ashoke Deb v. **SIRVA Inc., and Allied Van Lines Inc.,** U.S. District Court, Southern District of Indiana, Indianapolis Division. Subject matter: Intellectual property valuation (Report issued in 2018).

Expert Reports and Deposition in re: **Eric McNatt** v. Richard Prince, et al, U.S. District Court for the Southern District of New York. Subject matter: Copyright infringement (Deposition and Reports issued in 2018).

Expert Reports and Deposition in re: **Donald Graham** v. Richard Prince, et al, U.S. District Court for the Southern District of New York. Subject matter: Copyright infringement (Deposition and Reports issued in 2018).

Expert Reports and Deposition in re: Joao Bock Transaction Systems, LLC, Delaware Bankruptcy Court. Subject matter: Patent valuation (Reports issued in 2018, Deposition in 2019).

Expert Report in re: Certain LED Lighting Devices and Components Thereof, United States International Trade Commission. Subject matter: ITC Section 337 Investigation for Patent Infringement and issues related to a General Exclusion Order (Report issued in 2018).

Expert Declaration and Deposition in re: Next Caller Inc. vs. **TrustID Inc.**, USPTO, Case IPR2019-00039. Subject matter: Secondary considerations of non-obviousness (commercial success) (Deposition and Declaration issued in 2019).

Expert Reports, Deposition, and Trial in re: **TrustID Inc.** v. Next Caller Inc., U.S. District Court for the District of Delaware. Subject matter: Patent infringement (damages, commercial success, permanent injunction)(Reports issued in 2019 and 2020; Deposition in 2020; Trial in 2021).

Expert Reports, Deposition, and Trial in re: **TrustID Inc.** v. Next Caller Inc., U.S. District Court for the District of Colorado. Subject matter: Trade Secret Misappropriation and Breach of Contract (Reports issued in 2019 and 2020, Deposition in 2020, Trial in 2021).

Expert Report in re: **Graphic Packaging International, LLC** v. Inline Packaging, LLC, U.S. District Court for the District of Minnesota, Subject matter: Patent infringement (Report issued in 2020).

**Stephen Holzen**
Managing Director



Expert Report and Deposition in re: Steven Douglas Coleman vs. **Maria Kim Grand**, U.S. District Court for the Eastern District of New York. Subject matter: Defamation (Deposition and Reports issued in 2019).

Expert Report in re: **Robert Teti and ITET Corporation** vs. Mueller Water Products Inc., et al., Canadian Superior Court of Justice for the Province and Territory of Ontario. Subject matter: Breach of contract (Report issued in 2020).

Expert Reports in re: **Fuma International LLC** vs. RJR Reynolds Vapor Company, U.S. District Court for the Middle District of North Carolina. Subject matter: Patent marking and patent infringement damages (Reports issued in 2020).

Expert Report in re: Trevor Andrew Bauer v. **Brent Pourciau, Top Velocity, LLC, Hauser Productions, LLC, Houston Casualty Company, And Wilshire Insurance Company**, U.S. District Court for the Eastern District of Louisiana. Subject matter: False advertising (Report issued in 2020).

Expert Reports in re: **Ely Holdings Limited, et al**. v. O'Keefe's, Inc., U.S. District Court for the Northern District of California. Subject matter: Patent infringement, false advertising, and tortuous interference (Reports issued in 2020).

Expert Reports in Jesse Mesmer, Tim Reese, and Big Fish Partners v. **Maggie Browney and Lindsay Francis as Co-Trustees of the Wayne D. Miller Revocable Living Trust Dated May 21, 2013**, In the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida, Case No. 18-CA-2840. Subject Matter: Breach of Contract (Reports issued in 2020).

Expert Report in **Jonathan B. Foxx** v. United Parcel Service, Inc.; U.S. District Court for Eastern District of Virginia, Richmond Division. Subject matter: Unlawful termination (Report issued in 2021).

Expert Report in re: Software Pricing Partners, LLC v. **James H. Geisman**, U.S. District Court for the Western District of North Carolina, Charlotte Division. Subject matter: breach of contract (Report issued in 2021).

Expert Report, Deposition and Trial in re: **VideoShare** v. Google LLC and YouTube, LLC; U.S. District Court for the Western District of Texas, Waco Division. Subject matter: Patent infringement (Trial, Deposition, Report issued in 2021, Declarations in 2022 and 2023).

Expert Report and Deposition in re: **Better Holdco, Inc.** v. Beeline Loans, Inc.; U.S. District Court for the Southern District of New York: Trade secret misappropriation (Report issued in 2021, Deposition in 2022).

Expert Report and Trial in re: **The Middle East Forum** v. Lisa Reynolds-Barbounis; U.S. District Court for Eastern District of Pennsylvania. Subject matter: breach of contract and trade secrets (Trial and Report issued in 2021).

**Investment Banking & Restructuring** | **Transaction Advisory** | **Valuation Advisory** | **Disputes, Claims, & Investigations**

stout.com

6

**Stephen Holzen**
Managing Director



Expert Report in re: **LeVine** v. Virginia Eagle Distributing Company, LLC; U.S. District Court for the Eastern District of Virginia. Subject Matter: Wrongful Termination (Report issued in 2021).

Expert Report and Deposition in re: **Melchior A. George** v. Molson Coors Beverage Company USA, LLC; U.S. District Court for the District of Columbia. Subject Matter: Wrongful termination (Report issued in 2021, Deposition in 2022).

Expert Declaration in re: Aatrix Software, Inc. v. **Greenshades Software, Inc.,** U.S. District Court, Middle District of Florida, Jacksonville Division. Subject matter: Data analytics in support of a discovery dispute (Declaration in 2022).

Expert Report in re: **Charlotte Djossou** v. District of Columbia; In the Superior Court of the District of Columbia, Civil Division, 2020-CA-00429213. Subject Matter: Wage and labor dispute involving professional retaliation (Report issued in 2022).

Expert Report and Deposition in re: VARTA Microbattery GmbH vs. **Guangdong Mic-Power New Energy Co., LTD.**; U.S. District Court for the Eastern District of Texas, Marshall Division, 2:21-cv-00036. Subject Matter: Patent Infringement (Report issued in 2022, Deposition in 2022).

Expert Reports and Deposition re: **Geospatial Technology Associates, LLC** vs. The United States; In The United States Court Of Federal Claims; Case No. 16-346. Subject Matter: Patent and Copyright Infringement under 1498(a) and 1498(b) (Reports issued in 2022 and 2023, Deposition in 2023).

Expert Report and Deposition in re: **Bill J Co, LLC** vs. Hewlett Packard Enterprise Company and Aruba Networks, LLC; In the U.S. District Court for the Eastern District of Texas, Marshall Division, 2:21-CV-00183. Subject Matter: Patent Infringement (Report issued in 2022, Deposition in 2022).

Expert Disclosure, Expert Declaration, Deposition and Trial in re: **Fairmont Riding Club, LLC** and Ann J. Moeller v. Nadine Pestana et al., Superior Court of the State of California, County of Contra Costa; Case No.: CIVMSC17-00630. Subject Matter: Promissory Fraud, Interference with Contractual Relations, Interference with Prospective Economic Advantage, and Slander (Disclosure and Declaration both issued in 2022, Deposition in 2022, Trial in 2023).

Expert Report in re: **Forest River, Inc.,** vs. inTech Trailers, Inc., U.S. District Court for the Northern District of Indiana, South Bend Division; Case No. 3:21-cv-00645-DRL-MGG. Subject Matter: Trademark Infringement (Report issued in 2022).

Expert Declaration in re: **Topia Technology Inc.** vs. Box, Inc. et al.; U.S. District Court for the Western District of Texas, Waco Division; Case No. 6:21-cv-01372-ADA. Subject Matter: Patent Infringement (Declaration in 2022).

**Stephen Holzen**
Managing Director



Expert Reports, Deposition, and Trial in re: **Repeat Precision, LLC** vs. DynaEnergetics Europe GmbH and DynaEnergetics U.S., Inc., U.S. District Court for the Western District of Texas, Waco Division; Case No. 6:21-cv-00104-ADA. Subject Matter: Patent Infringement (Reports issued in 2022, Deposition in 2022, Trial in 2023).

Expert Declaration and Mediation in re: **TD Private Client Wealth, LLC** vs. Haney Dimian And Wells Fargo Clearing Services, LLC, Financial Industry Regulation Authority (FINRA), Dispute Resolution, Case No. 21-01903. Subject Matter: Breach of Restrictive Covenants (Declaration issued in 2022, Mediation in 2022).

Expert Report in re: **TrackThings, LLC** vs. Amazon.com, LLC et al, U.S. District Court for the Western District of Texas, Waco Division; Case No. 6:21-cv-00720-ADA. Subject Matter: Patent Infringement (Report issued in 2023).

Expert Declaration in re: **PerDiemCo LLC** v. CalAmp Corp, U.S. District Court for the District of Delaware; Case No. 1:20-cv-01397-GBW-SRF. Subject Matter: Patent Infringement (Declaration issued in 2023).

Expert Report and Deposition in re: **Staton Techiya, LLC et al** v. Samsung Electronics Co., LTD, et al, U.S. District Court for the Eastern District of Texas, Marshall Division, Case Nos. 2:21-cv-00413-JRG-RSP and 2:22-cv-00053-JRG-RSP. Subject Matter: Counterclaims for Trade Secrets, Breach of Fiduciary Duty, and Conspiracy (Report issued in 2023, Deposition in 2023).

Expert Reports and Deposition in re: **Groove Digital, Inc.** v. Jam City, Inc., U.S. District Court for the District of Delaware; C.A. No. 1:18-cv-01331-UNA. Subject Matter: Patent Infringement (Report issued in 2023, Deposition in 2023).

Expert Reports and Deposition in re: **Groove Digital, Inc.** v. King.com, LTD., U.S. District Court for the District of Delaware; C.A. No. 1:18-cv-0836. Subject Matter: Patent Infringement (Report issued in 2023, Deposition in 2023).

Expert Report in re: **Videoshare, LLC** v. Meta Platforms, Inc., U.S. District Court for the Western District of Texas, Waco Division. C.A. No. 6:21-CV-00254-ADA. Subject Matter: Patent Infringement (Report issued in 2023).

Expert Report in re: **Electrolysis Prevention Solutions LLC** vs. Daimler Trucks North America LLC, U.S. District Court for the Western District of North Carolina, Charlotte Division, C.A. No. 3:21-cv-171; Subject Matter: Patent Infringement (Report issued in 2023).

Expert Report and Deposition in re: **Q Technologies, Inc.** vs. Walmart, Inc., U.S. District Court for the Western District of Texas, Waco Division, CA No. 21-779; Subject Matter: Patent Infringement (Report issued in 2023, Deposition in 2023).

**Stephen Holzen**
Managing Director



Expert Report in re: **University of Pittsburgh – of the Commonwealth Systems of Higher Education** vs. Cochlear Limited, et al, U.S. District Court for the Western District of Texas, Waco Division, Civil Action No. 6:21-cv-986. Subject Matter: Patent Infringement (Report issued in 2023).

Expert Report and Deposition in re: **Aspire Solutions, Inc.** v. J6 Management Consulting, LLC, U.S. District Court for the Northern District of Georgia, Atlanta Division, C.A. No. 1:20-c-06255-LMM. Subject Matter: Breach of Contract (Report issued in 2023, Deposition in 2023).

Expert Report in re: **Mednet Solutions, Inc.** v. Eric Jacobson and Veeva Systems, Inc., U.S. District Court for the District of Minnesota, Case No. 0:20-c-02502 DSD-JFP. Subject Matter: Trade Secret Misappropriation, Breach of Contract, and Violation of the Computer fraud and Abuse Act (Report issued in 2023).

Expert Declaration, Deposition, and PI Hearing in re: **DaVinci Lock, LLC** v. SpiderDoor, LLC, U.S. District Court for the Northern District of Alabama, Southern Division, C.A. No. 2:23-cv-00343-CLM. Subject Matter: Preliminary Injunction, Irreparable Harm, Balance of Hardships, Public Interest, Patent Infringement (Declaration issued in 2023, Deposition in 2023, PI Hearing in 2023).

Expert Reports and Declaration in re: **The Trustees of Purdue University** v. STMicroelectronics International N.V. and STMicroelectronics, Inc., U.S. District Court for the Western District of Texas, Waco Division, Civil Action No. 6:21-cv-00727-ADA.  Subject Matter: Patent Infringement (Reports and Declaration issued in 2023).

Expert Report in re:  **Woodstream Corporation** v. Nature's Way Bird Products, LLC, District Court for the Northern District of Ohio, C.A. No. 1:23-cv-00294.  Subject Matter:  Patent Infringement (Report issued in 2023).

Expert Report in re: Kopp Development, Inc. v. **Metrasens, Inc.**; District Court for the Northern  District of Ohio, Eastern Division, 1:21-cv-01216-PAB.  Subject Matter: Tortious Interference with Business Relations, Negligent Misrepresentation, Defamation, False Advertising, and Patent Infringement (Report issued in 2023).